## M. C. FRAIM v. LOUISA FREDERICK.

1—A married man is not disqualified by reason of interest to testify with regard to a conveyance of his wife's land by him and her by deed with general warranty, when he has no individual interest in the litigation, and her interest is balanced.

2—A vendor of land by deed with general warranty is a competent witness to prove that, before or at the sale, he notified his vendee of an outstanding vendor's lien on the land sold; and such evidence is not objectionable on the score of being in disparagement of the title conveyed by the witness.

3—A purchaser who, in good faith and without knowledge or notice of the rights of third parties, pays the whole of the purchase money or valuable consideration for the land sold, is such a purchaser as is entitled to the equitable protection of the courts.

4—But a purchaser who has not paid the valuable consideration, though he may have received a deed of conveyance, is not such a purchaser.

5—If a purchaser has paid part of the purchase money before notice of a lien on the land, he will be protected *pro tanto*, provided that in making any further payment, after notice, he sees to its application in satisfaction of the lien.

6—But if, after notice, he makes a further payment without seeing to its application in satisfaction of the lien, it is an act of bad faith which contaminates the whole transaction from the beginning, and he will not be protected even as to such payments as he made before notice.

7—In this case, it is *held* that the purchaser resisting the enforcement of the lien not being a *bona fide* purchaser, it was not error for the court below to direct in its judgment that any surplus of the proceeds of the land, which might remain after satisfying the lien, should be paid, not to him, but to his vendors, the makers of the notes secured by the lien.

APPEAL from McLennan. Tried below before the Hon. A. J. Evans.

The appellee, Louisa Frederick, brought this suit on the 10th of September, 1868, in the District Court of McLennan county. She alleged in her petition that, on the 9th of October, 1865, Charles A. Hamilton and his wife, M. M. Hamilton, executed and delivered to John Shaw their two promissory notes for $850 each, one due January 1st, 1867, and the other January 1st, 1868; which notes were indorsed by Shaw, the payee, to the plaintiff, and had never been paid. That the said notes were given by the Hamiltons to Shaw for part of the consideration of two small tracts of land near Waco, described in the petition, conveyed by Shaw to the Hamiltons at the time the notes were given, but without reserving the vendor's lien on the face of the deed. That on or about the — day of March, 1868, Hamilton and wife conveyed the land to Marck C. Fraim, the appellant, who was represented in the transaction by his brother, J. M. Fraim, as his agent. That J. M. Fraim and M. C. Fraim, at the time they took the conveyance from the Hamiltons, well knew that the notes above mentioned were outstanding and unpaid, and that the vendor's lien existed on the land to secure their payment; but for the purpose of assisting the Hamiltons in defrauding plaintiff out of her money, due on said notes and secured by such lien, they made the purchase of the land from the Hamiltons, to plaintiff's damage, four thousand dollars. Hamilton and wife, Shaw, and both the Fraims, were made defendants; and the prayer was for judgment against the Hamiltons and Shaw, with foreclosure of the vendor's lien on the land.

The two Fraims pleaded a general demurrer and general

denial. Charles A. Hamilton pleaded the general denial. The other defendants filed no answers.

The plaintiff amended her petition, and alleged that although the Hamiltons had conveyed the lands to M. C. Fraim alone, yet J. M. Fraim was a party in interest in the purchase, and was now part owner of the land; but that he and M. C. Fraim, colluding together to defeat petitioner's lien, took the deed to M. C. Fraim alone, hoping thereby to avoid the effect of notice that the notes and lien were outstanding and unsatisfied.

The cause came to trial in July, 1869. The plaintiff read the two notes above described, and the deed from Shaw to Mrs. M. M. Hamilton, bearing the same date as the notes, and conveying to her the two small tracts of land described in the petition. The plaintiff also read the deed from the Hamiltons to M. C. Fraim, dated 18th of March, 1868, and conveying the same land, with a reservation of a lien for unpaid purchase money. The plaintiff proved by the deposition of Charles A. Hamilton, one of the defendants, that in March, 1868, he, as agent for his wife, sold the land to J. M. Fraim, who represented himself as agent for his brother, M. C. Fraim; that the deed was made to M. C. Fraim, but the trade was negotiated with J. M. Fraim, and the deed was delivered to him, and he executed the notes as agent of M. C. Fraim. That about half the purchase money had been paid in cattle, which were in the brands of J. M. Fraim, and which belonged to him. Witness never negotiated with any one but J. M. Fraim, nor received any pay from any one else, in the transaction. And the witness stated in positive terms that he knew from his own knowledge that the property in the name of M. C. Fraim, really belongs to J. M. Fraim, who would not take the deed in his own name because he was afraid of the lien of the two notes. The Fraims objected to the competency of Hamilton as a witness, both on the ground that he had a disqualifying interest, and that his evidence was in disparagement of the title he had conveyed to M. C. Fraim. The court overruled both objections, and the Fraims excepted.

There was a large amount of other evidence introduced. The plaintiff propounded a long series of interrogatories to the Fraims. J. M. Fraim, in his answers, stated that he knew, at and before the conveyance by the Hamiltons to his brother, that the two notes made to Shaw by the Hamiltons were unpaid and held lien on the land; but he denied positively that he ever communicated those facts to his brother, or that his brother, so far as he knew, had ever heard of them until long after the purchase from the Hamiltons. He, also, denied that he made the trade with the Hamiltons for the land, or that he had made any payments on it, stating that the cattle paid to the Hamiltons was the property of M. C. Fraim, and was paid by him. He denied that he had or ever had any interest in the land, admitting that he had spoke to Hamilton about purchasing it, but declined doing so on account of the lien on it for the Shaw notes.

M. C. Fraim, in his answers, stated to the same general effect, claiming that the purchase from the Hamiltons was made by him and for his individual benefit; that the cattle paid on the purchase were his individual property, and were paid by him; denying positively that he had any knowledge or notice, until this suit was brought, of the existence of the Shaw notes, or of any outstanding lien or incumbrance on the land; and denying that J. M. Fraim had, or ever had had, any interest in the purchase or in the land. In one answer he stated that about $1018 of the purchase money was still due from him to the Hamiltons, and was still unpaid; and this answer was the only answer of either of the Fraims which was read by the plaintiff to the jury. The Fraims were permitted by the court, over objections of the plaintiff, to read the others, by one of which it appeared that since the suit was brought, M. C. Fraim had paid some $250 of the purchase money to the Hamiltons.

There was evidence of other witnesses tending strongly to show collusion between the two Fraims in the purchase of the land, and in taking the deed to M. C. Fraim alone; but enough

has been set forth here, in connection with what appears in the opinion of the court, to elucidate the rulings.

The substance of the instructions given by the court below to the jury is sufficiently indicated in the opinion.

The defendant, M. C. Fraim, asked the court to instruct the jury that if they believed he had purchased the land without notice, either actual or constructive, of the notes, and that he had paid part of the purchase money before he had received such notice, then, as to the money so paid, he was an innocent purchaser for value. This was refused.

He asked further the jury be instructed that the answers by him and J. M. Fraim to the plaintiff's interrogatories could not be overthrown, except by the evidence of two witnesses against each, or one witness and strong corroborating circumstances against each. This was given.

And he asked that the jury be directed to disregard so much of C. A. Hamilton's testimony as tended to show that he negotiated the trade with J. M. Fraim, and that J. M. Fraim had notice of the notes. This was refused.

The jury found for the plaintiff the sum of $2244 50, and that the vendor's lien existed on the land described in the petition, and should be enforced.

Judgment was rendered against the Hamiltons and Shaw for the amount of the verdict, with decree foreclosing the lien on the land, and directing that any surplus proceeds of the land after satisfying the plaintiff's debt, should be paid to the Hamiltons.

There was doubtless a motion for a new trial made and overruled, but it does not appear in the transcript, though one of the assignments of error is based on it.

During the progress of the trial, it was suggested to the court below that Charles A. Hamilton, one of the defendants, had gone into bankruptcy since the commencement of the suit; but the court held him to be, nevertheless, a necessary defendant, by reason of the statute of this State requiring husbands to be joined in suits against their wives.

*Herring & Anderson*, for the appellant.—This is a suit by appellee against appellant, J. M. Fraim, Chas. A. Hamilton and wife, M. M. Hamilton, and one Shaw, on notes executed by Hamilton and wife to Shaw for a tract of land near Waco, and endorsed by Shaw to appellee, praying for judgment against the makers of the notes and endorser and foreclosure of vendor's lien. The petition shows that Shaw sold the land to Hamilton's wife, and executed a deed to her with full covenants of seizin and warranty, reciting the full payment of the purchase money; and that said deed was duly recorded in the office of the county clerk of McLennan county. It further shows a sale by Hamilton and wife to appellant and the execution of a deed by them to him, which also recites the payment of the purchase money; but charges that J. M. Fraim, with notice of the notes in controversy, negotiated and made the trade with Hamilton and wife, and fraudulently took the deed in the name of his brother, the appellant, in order to avoid the effect of notice to him, and to place him in the position of innocent purchaser, for value, without notice. Appellee having alleged all the facts necessary to constitute appellant an innocent purchaser, and having coupled therewith sufficient allegations of fraud, if true, to defeat him as such innocent purchaser, assumed voluntarily the *onus probandi* of establishing all and singular her allegations without the necessity of any affirmative special pleading on the part of appellant. (Grimes v. Hagood, 19 Tex., 249.)

Judgment for appellee for amount of notes sued on; for foreclosure of vendor's lien; and decree that the land should be sold, as under execution, to satisfy said judgment; and if there should be any remainder, that the same should be paid not to appellant, the vendee of Hamilton and wife, but to them.

The first assignment of error is, that the court erred in admitting the deposition of Charles A. Hamilton. 1st. Because though competent, by reason of his bankruptcy, yet he is incompetent because his wife is interested as warrantor:

and it is certainly too plain for argument that a husband can not testify in favor of his wife where she may sustain loss or damage. 2d. Because the act of bankruptcy does not relieve him from the sound rule of law, that after he has parted with the title and possession of land, he can not by his declarations or admissions, much less his depositions, affect or disparage the title of his vendee. (Thompson v. Herring, 27 Tex. R., 285; Id., Carleton v. Baldwin, 572.)

It may be said, however, that so much of Hamilton's deposition as disparaged the title of appellant was excluded. It is submitted that the part admitted indirectly allowed Hamilton to affect appellant with notice of the notes in controversy by proving J. M. Fraim his agent and notice thereof to him, thereby permitting a vendor to do indirectly that which he can not do directly.

The 2d, 3d and 4th assignments will be considered together.

That the court erred in that part of his charge which denies that appellant is an innocent purchaser as to amount paid, if before payment of *all the purchase money,* he had notice of the notes in suit, there can be no question. First Story's Equity Jurisprudence § 64 c. p. 76, the law is thus written: "So, the purchaser must have paid his purchase money before notice, for otherwise he will not be protected; *and if he have paid a part only he will be protected* pro tanto *only.*" In Leading Cases in Equity, vol. 2, part 1, p. 79, the following language is supported by numerous authorities there cited, and to which reference is made: "It is well settled, moreover, that to entitle a purchaser to protection, the consideration of the purchase must not only be valuable, but must have been wholly *or partially paid or executed.*"

The first charge asked by appellant and refused by the court, submits the law as above enunciated; and, we submit, was warranted by the evidence, and should have been given to the jury; and for this error alone the court should have granted a new trial.

The fifth assignment is, that the judgment and decree of

the court is error in this: in not decreeing any remainder from the sale of the land to appellant, and in ordering the same, if any, to be paid to M. M. and Chas. A. Hamilton.

We are at a loss to account for the logic, law or reason of this part of the decree. It certainly took Hamilton and wife by surprise, as they claimed, neither by pleading or proof, any interest in the judgment and decree of the court. They had sold and conveyed the land to appellant. The contract of sale was executed, and part of the purchase money paid to them; and for the remainder they, at the time of the trial, held notes of other parties, with no such indorsement thereof by appellant, as, in any event, could make him responsible for their payment to his vendor, the Hamiltons. Surely, if appellant was not an innocent purchaser for value, he was a *bona fide* purchaser from Hamilton and wife, and as between them they alone could question this, which they have not pretended to do. In so far as appellee is concerned, if appellant be held a purchaser with notice, then her claim of right only extends to satisfaction of her lien; and the remainder should have been decreed to appellant; for which error of the court, if for none other assigned, it is submitted this cause should be reversed and remanded.

*Flint, Chamberlin & Graham*, for the appellee.—1st. In reply to the first argument of error, filed by the appellant, Marck C. Fraim, in this case, the appellee says that not only was so much of the testimony of Chas. A. Hamilton as was admitted in the court below, properly admitted, but that that which was excluded was improperly excluded. The doctrine that a vendor can not be heard to disparage the title of his vendee, as held in the bill of exceptions, to which the first error assigned refers, has long since been overruled, if, indeed, it has ever been held to apply to cases similar to this. In the Inhabitants of Worcester v. Eaton, 11 Mass., 374, A conveyed to B and C, and they to D. Two years afterwards A again conveyed to E, and the latter brought suit for the

land, and was permitted to prove by A that the consideration for which she conveyed to B and C was illegal. In Locker v. Haynes, 11 Mass., 498, A conveyed to B and B to C; D levied on the land as the property of A, and was permitted to prove by A and B that their conveyances were fraudulent, and the court said that all persons not disqualified by interest must be permitted to testify in such a case. In McFerren v. Powers, 1 Serg. and Rawle, 102, a grantor to a deed was held competent to prove that his conveyance was obtained by misrepresentation and without consideration. And in Brownrig v. Downing, 4 Id., 494, to prove that he had no title when he conveyed. In Hudson v. Hulbert, 15 Pick., 423, it was held that a grantor may invalidate his own deed. The rule that a party to an instrument can not be heard to disparage it, applies only to negotiable instruments, if, indeed, it now applies to them. (Inhabitants of Worcester v. Eaton, 11 Mass., 374; Locker v. Haynes, 11 Mass., 498; Hudson v. Hulburt, 15 Pick., 423; Baird v. Cochran, 4 Serg. and Rawle, 397; Hill v. Payne, 3 Mass., 559, etc.)

The fact that Chas. A. Hamilton and wife made, as appellant alleges, a warrantee deed to appellant, which is assigned in the first assignment of error as a reason why the testimony of said Chas. A. Hamilton should be excluded, renders the competency of both of them less doubtful. For, had they not given a warrantee deed, it might have been to their interest that appellee make her money out of the land, and thus relieve themselves from the debt; but with the warrantee deed their interest would be balanced, for if the appellee fail in her efforts to subject the land to the payment of the debt, the judgment goes against witness and wife for the debt, and they pay it to the appellee, but if appellee succeeds in subjecting the land, they become liable to appellant for the debt on their warranty, and may be compelled to pay it to him. It would thus be a matter of indifference to witness whether the debt be paid to appellant or appellee. As to balanced interest, see 1 Greenleaf's Ev., 420, and that one defendant may testify against his

co-defendant, if his interest is balanced, see Gill v. Campbell, 24 Tex. R., 405.

The case of Thompson v. Herring, 27 Tex. R., 282, relied on below, in support of the doctrine that a vendor can not disparage the title of his vendee, does not apply in this case, because in that case the idle declarations of the vendor, out of possession, were excluded because they were hearsay, and not under oath, and here we are taking the testimony of the supposed vendor under a commission, and because, too, in this case the appellant did not, in his answer in the court below, set up any *bona fide* or other title in himself, or even allege that he was in possession. There were no allegations or proof in the court below that the Hamiltons had parted with the possession (and they, in fact, had not). The allegations of the appellee on this point merely charge that the Hamilton's conveyed the land in question to appellant, through J. M. Fraim, as the latter's agent, and that they took this conveyance for the purpose of aiding and assisting the said Hamiltons in overreaching appellee and defrauding her out of her lien on said land. And the appellant did not claim, in his pleadings, that he had any title, or even pretended title, to disparage, and should not have been heard to object to the testimony of his supposed vendor. The testimony ruled out below tended to show who made the supposed purchase from the Hamiltons, whether or not he had notice of the lien of the notes sued on, what was paid and to be paid, etc., which, we submit, is not such a disparagement of title as would come within the rule, even though it applied to such cases.

2. As to the second error assigned, it is submitted that the court ruled the law correctly. (See 2 Sug. on Vendors; p. 533, § 17; Watkins v. Edwards, 23 Texas, 447 ; Beaty v. Whitaker, . 23 Texas, 528.)

3. The third error assigned is, in substance, a repetition of the first and second, and is answered in our answers to them. And we contend that, even though the evidence of Charles A. Hamilton should be excluded as claimed in the first and second

assignments of error, and even though the judge's charge to the jury should be considered erroneous, as claimed in the second and third, neither of which claims is founded in good law, yet there is enough evidence left to warrant the jury in finding that the supposed purchaser from the Hamiltons had notice of the lien not only before any part of the purchase money was paid, but at the time of the said purchase. The appellant, to whom said conveyance was made, denies, in his answer to interrogatories propounded to him, that he had notice of the lien in question, and claims that he acted in person in the purchase. To destroy this testimony we must have the oath of two witnesses, or of one corroborated by strong circumstantial evidence (Paschal's Digest, 3753), and this last we have. 1. J. M. Fraim admits that he himself had notice. The witnesses, Richard Coke and M. D. Herring, both testify that they gave him notice before the trade. J. F. Hargrave says he heard both the Fraims speak of the lien about the time of the trade ; does not recollect whether before or after. 2. The witness, J. F. Hargrave, says that J. M. Fraim made the trade with the Hamiltons, and that he was present at the time, or, at least, on one occasion, that J. M. Fraim made the trade ; that J. M. Fraim acted as the agent of appellant in the purchase. This is corroborated by the chain of circumstances detailed by the witness, Richard Coke, and by S. H. Renick, who testifies that while R. Coke was writing at his table (and the latter testifies that he wrote the deed there), he heard J. M. Fraim say that he would have to fight off the "Shaw" notes as best he could, and by M. D. Herring, who testifies that J. M. Fraim handed him a note purporting to have been written by appellant, but which witness thought at the time was written by J. M. Fraim, requesting him to inspect the deed, etc., and by other circumstances detailed in his testimony.

It is thus established beyond a reasonable doubt, without the testimony of Charles A. Hamilton, that J. M. Fraim had notice of the lien before the conveyance to appellant, and that he made the trade either as the agent of appellant, or for him-

self and appellant. And if there is enough evidence to support the verdict of the jury without that claimed to have been improperly admitted, the judgment may be affirmed. (Carleton v. Baldwin, 27 Texas, 573 ; Herndon v. Casiano, 7 Texas, 323.)

4. The fourth error assigned requires no notice, as it is comprehended in the others.

5. In noticing the fifth error assigned, it is submitted, as the plaintiff alleged in her petition, that the conveyance from the Hamiltons to appellant was made for the purpose of defrauding appellee out of her lien, and charged a fraudulent combination and collusion for this purpose, and there was testimony sufficient to sustain the charge, and the appellant filed nothing in reply but a general denial, and set up no title or other equities in himself, not even claiming to be a *bona fide* purchase, nor denying the fraud charged, nor alleging the payment of the purchase money, nor denying notice; which a defendant in such cases must do whether it be charged in the petition or not. (See 2 Sug. Vendors, 574, 575, 577; Frost v. Beekham, 1 John's Ch., 301, 302; Jewett v. Palmer, 7 John's Ch., 64.) Appellant was not entitled to judgment for the excess or balance over on sale. If he had any special rights or equities not protected under the general denial, or if he was entitled to any special or equitable relief in case the appellee succeeded in proving the material allegations in her petition, which the general denial required her to do, he should have put in his special pleas, and had such rights adjudged to him. For it is an universal rule that the pleader must state the facts on which he intends to rely, (except in the plea of not guilty,) and ask the relief which he is entitled to, either speciality or in general terms, or the court can not grant the relief if it would. (Wells v. Fairbanks, 5 Tex., 584; McKey v. Welch, 22 Tex., 397.) Under the existing state of the pleading the court could only infer that appellant preferred to rely on his warranty against the Hamiltons for his remedy, if his purchase was *bona fide*.

The appellant, too, had not paid the purchase money to the Hamiltons, and they consequently had the superior title to the land, (Dunlap v. Wright, 11 Tex., 604; Baker v. Ramey, 27 Tex., 52,) and a stronger claim to the balance over than appellant has.

And though the court should consider the fifth error well assigned (which we do not admit), yet we submit that there is enough in the record to show the court what the judgment should be, and that in such case it is clearly within the power of the Supreme Court to revise and reform the judgment of the court below in that particular, (Pas. Dig., 1562; McNairy v. Castleberry, 6 Tex. 286; Mathews v. Hancock, 20 Tex., 7,) if, in their opinion, they should consider that it needed revision.

LINDSAY, J.—The main points relied upon, in the assignments of error, for the reversal of this judgment, are:

1. The admission, upon the trial, of the deposition of a husband whose wife's interest was involved in the subject matter of the controversy, to be read as evidence against her codefendants.

2. An error in the charge of the court, in announcing the proposition that a purchaser of land to whose notice a knowledge of the vendor's lien is brought subsequent to the contract of purchase, but prior to the payment of all the purchase money, and who still pays the residue, notwithstanding such notice, is not an innocent purchaser without notice.

3. When a vendor's *lien* for the purchase money is enforced against a subsequent purchaser with notice, the question of the propriety of adjudging the surplus of the proceeds of the sale of the land to the vendor of such subsequent purchaser.

Each of these points will be considered in its order:

1. In this case the beneficial owner of the estate involved was the wife. The husband was made a party *pro hac vice,* because the law required him to be united in all actions, even when the wife alone is beneficially interested in the result of the litigation. The fee was in her. It was her separate pro-

perty.  The prohibition of the common law is against a husband or wife testifying for or against each other.  The statutes of Texas prohibits either from testifying in relation to communications made to each other, either during the marriage or after the marriage ceases, except where such communications may go to extenuate or justify the conduct of either, when charged with an offense.  Besides, the statute provides that no rule of the common law which excludes a witness on account of such relationship, shall have any force or effect, unless in accordance with some express provision of a statute of the State.  (See Arts. 3112 and 3113, Paschal's Digest.)  The rule of evidence in criminal and civil cases *is* the same, both by the common law and by the statutes of this State.  In this case the husband was testifying neither for nor against the wife—neither for nor against himself.  The interest of both husband and wife was evenly balanced in this controversy.  If the *lien* was enforced, the debt of the wife and husband contracted in the purchase of the land was to be paid by its sale.  If the *lien* was not enforced, they had a just right to retain the purchase money for which they sold the land, to enable them to discharge the obligation contracted in their purchase.  And thus, upon the principle of fair and upright dealing, and upon the legal presumption of the honesty and integrity of the witness, not even a moral bias can be perceived, to cast suspicion upon the credibility of his statements: much less is there any direct legal interest in the results of the controversy to disqualify him to give his testimony in the cause.  The law would presume that he and his wife, in all fairness and honesty, had fully apprised their vendee of the equity of their vendor, or of the holders of their outstanding obligations, for the purchase money they had contracted to pay; and had explained all the circumstances to the purchaser at the time they made the alienation.  In a contest between other parties, these facts might properly enough be elucidated by their testimony, without an imputation of slandering the title which they had attempted to convey, and did

convey, subject, however, to their vendor's *lien*. It is to be presumed the purchaser from them made inquiry, as every prudent man would, whether there was any incumbrance upon the land. And the law indulges the presumption that, as honest dealers, the truth of the facts was communicated to the purchaser; and in making the purchase he did it *cum onere.* It is the honest dealer the law endeavors to protect, and not him who seeks, by art and cunning, to obtain an undue advantage. The testimony was competent. Of its credibility the jury were the judges.

2. The doctrine of the law, as to what constitutes a *bona fide* purchaser for a valuable consideration without notice, is well defined and well settled in American jurisprudence. He who purchases, and actually pays, not a part, but the whole, of the purchase money, or *the valuable consideration, in good faith,* without a knowledge of the vendor's *lien,* is such purchaser as the law contemplates; and he will be protected in a court of equity. He who has simply made a contract of purchase, and has received a deed of conveyance from his vendor, but has not paid *the valuable consideration,* is wanting in an indispensable element in the constitution of such a purchaser. He comes not within the rule, or the legal definition, of an innocent purchaser without notice. If the knowledge of the *lien* is brought to his notice before payment, and he afterwards pays the whole, or a part of the consideration, it is an act which the law regards as *mala fide,* and he forfeits the protection of a court of conscience, and can not shield himself under its ægis. True it is, if he has paid a part of the purchase money *before notice,* equity will afford him relief *pro tanto.* But other principles of equity are applied in affording such relief.

When, however, in utter disregard of the principles of good conscience, after he has knowledge of the *lien,* he pays either the whole, or a part, of the consideration, without seeing to its application for the extinguishment of the *lien,* with what grace can he attempt to shelter himself under the equitable principle,

which courts of equity employ for the protection of a *bona fide* purchaser for a valuable consideration without notice ? If he pays but a part, after such notice, it is an act of bad faith, which contaminates the whole transaction from the beginning, and no principle of equity can be invoked to exonerate him from the consequences of his own faithless act. The principles of equity were devised to enforce honest and fair dealing between man and man, and are not to be perverted to the giving of a seeming sanction to wrong-doing. The error assigned, therefore, against the legal proposition announced in the charge of the court to the jury, upon the facts developed on the trial of the cause, finds not its support in the principles of equity. The proposition in the charge is in strict consonance with the principles of right and justice.

3. An objection is taken to the judgment, because the surplus proceeds of the sale of the land, to satisfy the vendor's *lien*, is ordered therein to be paid over to the makers of the notes, which were the evidence of the unpaid purchase money, and under the judgment for which the *lien* upon the land was enforced. Being the makers of the notes, after the *lien* was satisfied, they certainly were the rightful claimants of the surplus products of the sale. But their vendee having paid to them, in a cash note, a part of the consideration of his purchase, it is supposed, without pleadings to warrant it, that the court ought to have directed the payment of the residue of the money, arising from the sale after extinguishment of the *lien* claim, to be made to the subsequent purchaser, who was insisting throughout the trial that he was a purchaser in good faith without notice. Now, the proof shows abundantly, that it was a *mala fide* contract, and that the whole transaction was a studied contrivance to evade the law of notice in regard to vendor's *liens*. This is made most manifest by all the testimony in the case; and the simple statement of the facts deposed to by the two attorneys, who testified on the trial, and whose testimony did not involve a question of professional confidence, brought out this studied contrivance in bold relief. In

such an attitude of the case, in its pleadings and in the proof, no principle of justice or of equity, authorized the court to render any other judgment than the one pronounced.

The judgment is affirmed.

Affirmed.