### RECTOR v. WILDRICK et al.

No. 7576—Opinion Filed June 6, 1916.
Rehearing Denied June 20, 1916.

(158 Pac. 610.)

1. **Vendor and Purchaser—Rights of Purchaser—Pre-Existing Lien—Enforcement.**
· One who has paid part of the purchase price of lands without notice of a lien thereon is a bona fide purchaser to the extent of the amount paid, and in a suit to enforce such lien will be protected pro tanto; but if, after notice of such lien and existing equities in favor of a third person, he collusively makes further payment to his vendor in a manner designed to defeat the same, such lien will be enforced to the extent of such payment.

2. **Vendor and Purchaser—"Actual Notice."**
The words "actual notice" do not always mean in law what in metaphysical strictness they import. They more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.

3. **Same.**
"One who purchases land with knowledge of such facts as would put a prudent man upon inquiry which, if prosecuted with ordinary diligence would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received."

(Syllabus by Bleakmore, C.)

Error from District Court, Craig county; Preston S. Davis, Judge.

Action by J. W. Wildrick against James W. Orwig and others, wherein Davis Hill and another were garnisheed. From the judgment John F. Rector, who was made a party defendant after commencement of the suit, brings error. Affirmed.

C. Caldwell, for plaintiff in error.

Riddle, Bennett & Mitchell, for defendants in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Craig county on May 17, 1913, by J. W. Wildrick against James W. Orwig, Katie E. Orwig, his wife, B. L. Hart, and R. A. Leavitt, to recover on certain promissory notes, and to foreclose a real estate mortgage securing the same, and on May 19th thereafter, Davis Hill and the Vinita National Bank were served with garnishment summons. Hart and Leavitt were not served with process. Orwig and wife answered. The garnishees also answered. Later John F. Rector was made a

party defendant and answered.

By the evidence it appears that on February 24, 1911, Orwig and wife executed and delivered to B. L. Hart their five negotiable promissory notes, one for $300 and four for $275 each, maturing, respectively, on the 1st of January of each of the next succeeding five years, together with a mortgage on 80 acres of land situate in Craig county, Okla., to secure the payment thereof. The mortgage was duly recorded. A short time thereafter Hart, by proper indorsement, transferred all of said notes, save the one for $275, due January 1, 1913, to R. A. Leavitt. In the fall of 1911, prior to the maturity of either thereof, Leavitt indorsed and delivered said four notes to the plaintiff Wildrick. There was no assignment of the mortgage by Hart to Leavitt or by Leavitt to the plaintiff; Hart retaining the possession thereof. On March 15, 1912, Hart, the record owner and holder of said mortgage, without the knowledge or consent of Wildrick, executed a release of the same, which was duly recorded on May 8, 1912, at which time Orwig and wife executed a first mortgage to another party on a large tract of land, including the 80 acres covered by the mortgage given to and released by Hart; and at the same time made a second mortgage, securing a note of $1,000 to Hart, and the note for $1,250 executed to Leavitt, in lieu of the four notes transferred by Hart to him, and which he at the time represented were owned and held by him, and in his possession at his office at Little Rock, Ark. There was some testimony tending to show that Orwig had been informed of plaintiff's ownership of the four notes in question at the time of this transaction, but the evidence is conflicting in this regard.

A year subsequent to the transactions last referred to, and some six months after Wildrick had learned of the release by Hart of the mortgage securing his notes, Orwig and wife entered into a written contract with the defendant John F. Rector, then a resident of Illinois, to convey to him 460 acres of land, including the tract covered by the mortgage securing the notes in suit, for an agreed consideration of $30,800, a portion of which was the conveyance to Orwig of a farm in Illinois valued at $20,000 and the assumption of certain mortgages appearing of record on the Oklahoma land, the balance to be paid in cash. The defendant Rector was ignorant of the existence of the plaintiff and of the transactions by which he acquired the notes in suit. After entering into the contract with the Orwigs, John F. Rector returned to his home in Illinois, leaving his father, H. J. Rector, on the ground to represent him in

the performance thereof. The Orwigs furnished an abstract of title, which was examined and favorably passed upon by an attorney employed by H. J. Rector. Pursuant to such contract, on May 16, 1913, the Orwigs executed their deed to the 460 acres his home in Illinois, leaving his father, H. J. Rector, who on that day filed the same for record with the register of deeds of the proper county, and delivered to Orwigs the deed of his son to the Illinois land, a draft for $6,000 and a check for $1,300, drawn on the Cuba State Bank of Cuba, Ill., signed, "J. F. Rector, per H. J. Rector." Thereupon H. J. Rector returned to Illinois. On the following day, May 17, 1913, this action was begun, and two days later the garnishment proceedings were commenced against Davis Hill and the Vinita National Bank, in which bank the $1,300 check had been deposited for collection by Orwig. A few days after the arrival of H. J. Rector at his home in Illinois he received a telegram from Orwig, requesting that the payment of the check be stopped, and stating that a letter of instructions would follow. H. J. Rector, without consulting his son, the defendant herein, who resided some distance in the country from him, sent the telegram to the bank upon which the check was drawn, with no instructions in regard thereto. Later, he received a letter from Orwig, stating that he (Orwig) had been sued and the bank in which the check was deposited garnisheed, and requesting that the check be dishonored and a draft for the amount thereof he sent to him at Afton, Okla. This letter H. J. Rector delivered to the said bank of Cuba without instructions as to its action thereon. In compliance with the request of Orwig the bank refused to pay the check, and forwarded to him at Afton Okla., a draft for $1,300, which he received and cashed.

With reference to the transactions involved H. J. Rector testified:

"Q. After the contract having been made, what did your son do? A. He returned to Illinois. Q. And what did you do? A. I stayed here to close the contract. Q. Did you complete the contract with Mr. Orwig? A. Yes, sir. Q. And when was it completed? A. Seventeenth day of May, 1913, 17th or 16th. * * * Q. What information did you get from Mr. Orwig, after you had gone back home after the deed had been turned over, and after you had given the checks and paid the cash? A. I returned home that evening—Saturday evening, believe it was. Two or three days after I got home, I received a telegram. 'Stop payment on the check, a letter of instructions will follow.' I sent it to the bank. Q. Did you give the bank any directions? A. No, sir. * * * Q. Did you get a letter of instructions—did you get a letter afterwards? A. I believe that I did; yes, sir. Q. What did you do with it? A. Turned it into the bank. Q. Did you, upon receiving that letter, give the bank any instructions or directions? A. Nothing; only just turned it to the bank. Q. How did you turn it to them? A. I believe I delivered it to them in person. Q. How far did you live from Cuba? A. Five miles by rail. Q. In the letter, did it give you the details of what was going on down here? A. It said something like this. 'They garnisheed the bank,' or something to that amount. Q. Did they say who had? A. No, sir. Q. Did you acquire knowledge during any of that time that Mr. Wildrick was claiming that these notes were his, and that they had not been paid? A. No, sir. Q. When did you first acquire that knowledge? A. Some months afterwards; I can't say just when."

The defendant John F. Rector testified:

"Q. Did you give a check, or did your father give a check, for $1,300 for part of the purchase price of this land? A. Yes, sir. Q. What do you know about that proposition, John? You heard the testimony of Mr. Orwig—did you give any directions to the bank? A. No, sir; I did not. Q. Did you receive any communication from Mr. Orwig? A. No, sir. Q. Did you learn before the money was paid by the bank out of your funds that Mr. Wildrick had sued Mr. Orwig on these four notes introduced in evidence, claiming a mortgage on part of the property that you had bought and had run a garnishment? A. No, sir; I knew nothing of Wildrick for some time later. Q. About how long after, John? A. I think it was the last day of December, when I was in your office, 1913. Q. That was after you had moved down here? A. No, sir. Q. When did you move here? A. Nineteenth of January, 1914. Q. Were you here a few days previous in December? A. Yes, sir. Q. And that was the first time you learned the exact status of this matter? A. Yes, sir."

Cross-examination:

"Q. I believe you say, when your contract was made and signed you returned to Illinois and left the matter in the hands of your father? A. Yes, sir. Q. Was he to act for you in your business? A. Yes, sir."

With reference to this transaction Orwig testified as follows:

"Q. Did anybody connected with the transaction ever tell you why Mr. Rector's check was not paid that you sent through the Vinita National Bank. A. Anybody ever tell me? Q. Yes. A. No, sir. Q. Do you know whether or not it was refused for the purpose of avoiding the garnishment? A. Do I know? Q. Yes. A. I suppose it was. Q. That was the reason why? A. Yes, sir. Q. And then the other mode was taken to collect it to avoid the garnishment? A. Yes, sir."

Redirect examination:

"Q. Why do you think that was the reason? A. Because I think it was. Q. Have you got any information on the subject? A. Well, I wrote Mr. Rector and told him they had garnisheed the check, or the bank was garnisheed, and stop payment on the check, and

he stopped the payment on the check and sent me a draft for it."

The trial court made elaborate findings of fact, and reached certain conclusions of law. upon which judgment was rendered in favor of plaintiff against the Orwigs for the amount of the notes, and foreclosing the mortgage in suit as against the defendant Rector to the extent of $1,300, for which sum he was also awarded judgment over against the Orwigs. From this judgment Rector alone has appealed.

The conclusion of law pertinent to the questions necessary to be considered here is:

"That the defendant John F. Rector is the owner of the land described in the plaintiff's petition, in fee simple, having purchased the same without notice of the plaintiff's equity therein, and that he is a bona fide purchaser pro tanto as to all of the consideration paid before receiving notice of the plaintiff's claim. but that the defendant Rector, having received notice of the pendency of this suit before he paid the last $1,300 of the consideration to the defendants Orwig & Orwig, and having so paid the same to the said defendants thereafter, and in a manner which was intended to defeat, and which did in truth and in fact defeat, the garnishment of the plaintiff herein, and worked a fraud upon the plaintiff as to his rights thereunder and in this action in equity, and said conduct on the part of the defendants James W. Orwig and John F. Rector, being contrary to good faith, fair dealing, and the principles of equity. in so defeating the plaintiff's garnishment herein, and the said defendant John F. Rector having paid the same sum of $1,300, the balance due from him to the defendants Orwig & Orwig, on the consideration for said land in a manner and by means which did defraud and defeat the plaintiff's garnishment herein. and the said defendant John F. Rector, having failed to make any inquiry as to the nature of the suit brought by the plaintiff against the defendants Orwig & Orwig herein. when by investigation. after notice, he could and would have discovered the plaintiff's claim to a subsisting mortgage on said land and to the garnishment herein, is chargeable with notice of the plaintiff's mortgage and garnishment, at the time he paid the said $1,300 to the defendants."

In Lewis v. Kirk, 28 Kan. 497, 42 Am. Rep. 173, it is said:

"After a careful consideration of the authorities and the statutes of this state, we have come to this conclusion: Where a real estate mortgage is executed to secure the payment of a negotiable promissory note, such mortgage will so far partake of a negotiable character of a note that whenever the note is transferred by indorsement before due so as to free it from all equities existing in favor of the maker of the note, or prior indorsers, the mortgage will also be free from such equities. But until the mortgage is recorded, such transfer will not prevent a third person, who has no notice of the mortgage or transfer, from purchasing the mortgaged property and thereby obtaining a full and absolute title to the property, free and clear from the mortgage lien. But when the mortgage is recorded, its negotiable character is then extended even to bona fide purchasers of the property, and it retains such character contemporaneously with the existence of the note to which it is an incident until the note is satisfied, or until the mortgage is released of record by the mortgagee, or his attorney, assignee, or personal representative, and that when the mortgage is so released, it then loses its negotiable character to the extent that any third person who may then purchase the property in good faith will obtain the full. complete, and absolute title thereto, freed from all equities, liens, interests, trusts, or incumbrances existing in favor of any holder of a note and mortgage, whether the note is satisfied or not."

In Fraim v. Frederick, 32 Tex. 294, it is stated:

"The doctrine of the law, as to what constitutes a bona fide purchaser for a valuable consideration without notice is well defined and well settled in American jurisprudence. He who purchases, and actually pays, not a part, but the whole, of the purchase money, or the valuable consideration, in good faith, without a knowledge of the vendor's lien, is such purchaser as the law contemplates: and he will be protected in a court of equity. He who has simply made a contract of purchase, and has received a deed of conveyance from his vendor, but has not paid the valuable consideration, is wanting in an indispensable element in the constitution of such a purchaser. He comes not within the rule, or the legal definition, of an innocent purchaser without notice. If the knowledge of the lien is brought to his notice before payment, and he afterwards pays the whole, or a part, of the consideration, it is an act which the law regards as mala fide, and he forfeits the protection of a court of conscience, and cannot shield himself under its aegis. True it is, if he has paid a part of the purchase money before notice. equity will afford him relief pro tanto. But other principles of equity are applied in affording such relief."

See, also, Work v. Coverdale, 47 Kan. 307. 27 Pac. 984; Fluegel v. Henschel, 7 N. D. 276, 74 N. W. 996, 66 Am. St. Rep. 642; Union Canal Co. v. Young, 1 Whart. (Pa.) 410, 30 Am. Dec. 212; Kitteridge v. Chapman, 36 Iowa, 348.

It is clear from the evidence that the agency in this case was created for the purpose of fully performing the contract between J. F. Rector and Orwig. and it is apparent that H. J. Rector did not consider that his authority as agent had terminated when he received the letter and telegram from Orwig. for. continuing to act in that capacity, he delivered the same to the bank upon which he had drawn the check. with tacit, if not

specific direction, in compliance with the request of Orwig, to change the medium of payment of the $1,300 balance on the purchase price of the land, from his principal's outstanding check, which, if honored in due course, would have relieved him of all liability, and permitted the proceeds thereof to reach the garnishee bank, wherein the same had been deposited by the payee for collection, to a draft for that amount to be forwarded to Orwig at a different place, and with the collusive design to defeat the purpose of the garnishment proceedings. While he may not have had actual knowledge that the action in which the garnishment process issued affected the land purchased from Orwig, yet he did know that a portion of the purchase price thereof was involved, and that to depart from the course of its payment previously adopted by him and Orwig would probably aid Orwig in evading payment of a just debt and result in defrauding his creditor. In this situation, where mere passivity would have protected the rights of defendant, he became an active participant in the scheme of Orwig to defeat the garnishment and defraud the plaintiff. The knowledge he had gained from such communications was sufficient to put an ordinarily prudent person upon inquiry with regard thereto, such as would undoubtedly have led to actual notice of the equities of the plaintiff asserted in this action.

The rule applicable to such cases is announced in Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29, as follows:

"The words 'actual notice' do not always mean in law what in metaphysical strictness they import. They more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts. One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received."

Under all the circumstances of this case the notice of H. J. Rector, as agent, is properly imputable to the defendant, and is binding upon him.

The questions presented by other assignments of error are not material to a determination of the case. An examination of the entire record convinces us that there was no error committed upon the trial of the case prejudicial to the substantial rights of the defendant Rector.

The judgment should therefore be affirmed.

By the Court: It is so ordered.