Kenneth K. PALMER, Appellant,

v.

CREWS LUMBER CO., INC., et al.,
Appellees.

No. 45080.

Supreme Court of Oklahoma.

April 3, 1973.

Robert W. Raynolds, Ronald G. Raynolds, Tulsa, for appellant.

John L. Boyd, Ed Parks, Tulsa, for appellee, Crews Lumber Co., Inc., a corporation.

HODGES, Justice.

This is an appeal from a judgment in favor of Crews Lumber Company, a corporation (Crews) in an action to foreclose a mortgage and to determine priorities as between mortgagee and Kenneth K. Palmer (Palmer) concerning his alleged vendee's and materialmen's liens on the property in question.

On May 29, 1969, Palmer entered into a contract with Traditional Homes, Inc., for the construction of a house for Palmer. The written receipt and contract of sale between Palmer and Traditiönal provided for the construction of a house according to an approved set of plans for the price of $35,000.00. It also provided for a down payment of $3,500.00 which was paid by Palmer to Traditional. The contract contained the following pertinent clause:

"In the event this contract is breached by seller or terminated by buyer as provided above, seller will return the $3,500.00 part payment, for which purchaser is granted a lien on the subject property, to purchaser."

Some time after the execution of this contract, Maddox, who had executed the contract for Traditional, informed Ira D. Crews, Jr., Manager of Crews Lumber Co., that Traditional had a contract for the purchase of a house to be built on the property in question. He requested Crews to purchase the lot and to assist in financing construction. Crews and Traditional had worked together under a similar arrangement on at least eight other houses. Crews never furnished construction money without a loan commitment. A note and mortgage to Crews Lumber Co., in the amount of $26,250.00, was executed by Traditiönal July 7, 1969.

Ira D. Crews, Jr. et ux., and W. R. Grimshaw, et ux. deeded the lot to Traditional July 15, 1969. The deed was recorded December 4, 1969, Palmer was approved by the mortgage company on July 18, 1969. The mortgage from traditional to Crews was recorded July 31, 1969, and assigned to Republic National Bank on the same date. The mortgage was subsequently reassigned to Crews.

Traditional defaulted in the contract by abandoning construction of the house prior to its completion. When Traditional ceased construction, Crews entered into an arrangement with a former employee of Traditional to continue construction of the house to the point that it would at least be protected from the weather. It was during this phase of construction that Palmer furnished additional funds.

This action arose when Crews sought to foreclose its mortgage on the property. Palmer filed counter claim contending that his vendee's lien was prior and superior to the mortgage of Crews. He also alleged

that he had a superior lien to all parties because he had been induced to advance $1,204.20 in payment of construction bills for paint and texturing of the walls in the house after Traditional had abandoned the job, and while Crews was in charge of construction.

The Court of Appeals found that when Crews took over possession and construction of the house, it knew, because it was paying the bills, that the construction costs were running over the amount of money available in the permanent loan commitment. The Court also found that Crews knew that it did not intend to finish the house, and that it knowingly permitted Palmer to spend more money on this lost cause without saying anything about the facts as it knew them to be, and which were unknown to Palmer. The court held that the acts of conduct of Crews created an estoppel and it was therefore prevented and estopped from asserting the priority of its mortgage over Palmer's materialmen's lien.

■ Apex Siding & Roofing Co. v. First Federal Saving & Loan Assn., 301 P.2d 352, 353 (Okl.1956) was cited as authority for this holding. It states:

"It is the general rule that a recorded mortgage takes precedence over subsequent liens against the mortgaged property; but such a mortgage will be held subordinate to liens for improvements which are made after acts or conduct by the mortgagee that create an estoppel which prevents him from asserting his priority over the subsequent lien."

■ Crews asserts that estoppel was not plead, and that it is an affirmative defense which must be plead and satisfactorily proven. We concur with Crews on this point. See Sellers v. Sellers, 428 P.2d 230 (Okl.1967). However, we find that the facts constituting estoppel, although not formally plead, were sufficiently plead and satisfactorily proven. The holding of this court in Palovik v. Absher, 198 Okl. 671, 181 P.2d 989, 990 (1947) is applicable to the present situation. The court held that:

"A party entitled to an estoppel or waiver need not in all cases formally plead them. If the facts constituting the estoppel or waiver are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom."

■ The portion of the Court of Appeals opinion which holds that Palmer's materialmen's lien in the amount of $1,-204.20 is a first and superior lien to Crews' mortgage is affirmed.

The paramount issues to be determined by this court are whether Palmer's vendee's lien was prior to the mortgage, and if so, did Crews as mortgagee have actual or constructive notice of the lien.

There is no legal distinction under our statutes where the vendor contracts to sell land to which he already has title, and the case here where the vendor did not have title to the land at the time of the contract, but either misrepresented that he had title or represented that he could and would obtain it, and subsequently does obtain title.

The applicable statutes are:

42 O.S.1971 § 8—Lien on future interest.

"An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

42 O.S.1971 § 30—Lien of purchaser of real property.

"One who pays to the owner any part of the price of real property, under an agreement for the sale thereof, has a special lien upon the property, independent of possession, for such part of the amount paid as he may be entitled to recover back in case of a failure of consideration."

Ira Crews, Jr., manager of Crews, and one of the grantors in the deed to Traditional, testified that Crews had dealt with Traditional in the loaning of construction money on at least eight different occasions.

He stated that Crews would not loan money to Traditional to build speculative homes, but that there must first be a loan commitment. Pertinent testimony of Ira Crews, Jr. follows:

"A. We took a mortgage with builders on the amount of the commitment that they got from the loan company or close to it, if I thought there was a variance there why we—but we tried to stay right on the amount.

"Q. All right. Now, you wouldn't consider furnishing any material to Mr. Maddox until you knew that somebody had bought that lot and gotten a lien commitment, that is correct, isn't it?

"A. That's right. We always were sure that he, in this case Palmer, had produced a commitment from Oklahoma Mortgage.

"Q. And in addition to a commitment from Oklahoma Mortgage you knew that Palmer had a contract for the purchase of the lot and house?

"A. We had to or Oklahoma Mortgage wouldn't have issued the commitment.

"Q. Did you have any idea that (seller Traditional) he took anything down?

"A. I had no idea. I would assume that most builders do and they had too, but I wouldn't have any idea what the amount of money was.

"Q. You knew Palmer, on July 18 you knew the property had been sold, didn't you Mr. Crews?

"A. I knew they had a contract.

"Q. Yes, and you knew how much was going to be loaned against it, did you not?

"A. $26,000.00 the amount of the commitment.

"Q. Did you figure that was a hundred per cent loan?

"A. Why, of course not.

"Q. Well, if the deed is dated July 15, if that's the date on the deed that is not the date of the mortgage, is it?

"A. I took the mortgage, in advance. I don't know why the deed was made later, but I took the mortgage probably because he said he was going to have this contract, or I mean commitment letter, and I just took it and held it until I saw the commitment.

"A. Were they (Republic Bank) interested, did they ask you anything about whether or not an improvement, a residence, was going to be built on that lot?

"A. Oh, why certainly.

"Q. But you did know that prior to taking the mortgage out to the bank that the lot, Lot 8 of Block 6, had been sold to Palmer, didn't you?

"A. I didn't know who—well, I had seen Palmer's—no, let me see—yes, I guess his name was on Oklahoma Mortgage's deal.

"Q. Yeah, you had seen that?

"A. Yes.

"Q. And you knew it had been sold to Palmer didn't you?

"A. Yes."

A vendee's lien for return of the price paid is superior to a subsequent mortgage unless the latter is taken without notice, actual or constructive of the vendee's rights, notwithstanding the contract of the vendee is unrecorded or recorded subsequent to the mortgage. Ardisco, Ltd. v. Taconic Holding Corp., 10 A.D.2d 973, 201 N.Y.S.2d 992 (1960). See also 59 C.J.S. Mortgages § 224, p. 295.

The applicable Oklahoma notice statute, 25 O.S.1971 § 13, states:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence is deemed to

have constructive notice of the fact itself."

The cases in interpreting this statute, have held that whatever notice is enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry is notice of everything to which inquiry might lead. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it, particularly where it is his business to know the facts of which notice is to be had. Wayne Building & Loan Co. of Wooster v. Yarborough, 11 Ohio St.2d 195, 228 N.E.2d 841, 847 (1967); Singer-Fleischaker Royalty Co. v. Whisenhunt, 402 P.2d 886, 893 (Okl.1965); Trosper v. McKee, 153 Okl. 12, 4 P.2d 755 (1931); Keys v. Ponder, 118 Okl. 234, 226 P. 73, 75 (1924) 247 P. 33 (1925). A mortgagee may not close his eyes to facts, which if pursued, would disclose an unrecorded contract of sale.

It has been held by this court that the vendee under an executory contract for the sale and purchase of real property has an equitable lien or estate in the amount paid of the purchase price if the contract fails through no fault of the vendee. Schuman v. Board of Com'rs of Muskogee County, 184 Okl. 339, 87 P.2d 151 (1939). Cox v. Fowler, 169 Okl. 355, 37 P.2d 291 (1934).

A vendee's lien is valid against everyone claiming against the debtor, except a purchaser or incumbrancer in good faith and for value. 42 O.S.1971 § 28.

Good faith is defined by 25 O.S.1971 § 9 as:

" * * * an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious."

Bad faith has been described by this court in Tenneco Oil Co. v. Humble Oil & Refining Co., 449 P.2d 264 (Okl.1969);

and Rector v. Wildrick, 59 Okl. 172, 158 P. 610 (1916). The court held that one who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the " 'actual notice' he would have received." This same holding should be applied to a mortgagee.

The state of facts before this court for review, therefore is that Crews had notice of an outstanding contract of sale from the first negotiations concerning the construction loan to Traditional. (This is even admitted in the brief of Crews.) The only question is whether this is sufficient notice of Palmer's lien on the premises to put Crews on inquiry to the extent that it could not be an incumbrancer in good faith.

A very similar situation occurred in the case of Wayne Building & Loan Co. of Wooster v. Yarborough, 11 Ohio St.2d 195, 228 N.E.2d 841, 847 (1967). The court stated that:

" * * * It would certainly seem, on reason alone, that a bank loaning money on property for the purposes of construction of a house thereon, and *being informed that there is an outstanding contract for the sale of such property* upon completion, would be on inquiry as to the extent of any already existing interest of a purchaser under such contract, and would take a mortgage on the property subject to the equities of the purchaser. Analysis of the authorities confirms this conclusion. It is notice of 'the contract' which is referred to in most discussions of notice of an outstanding vendee's lien. See annotations, 45 A.L.R. 352, 353, 359 and 369; 33 A.L.R.2d 1384, 1406; 55 American Jurisprudence 945, Vendor and Purchaser, Section 552; 92 C.J.S. Vendor and Purchaser § 556f, p. 580. For notice of an outstanding equitable interest to exist, it

is not necessary that a person have knowledge or notice of the identity of its owner, or the extent of the interest, but merely that there is such an interest. 55 American Jurisprudence 1070, Vendor and Purchaser, Section 689."

Under the case law, and the applicable statutes, it was not necessary that Crews had actual notice of the lien provision in the contract or that it receive actual notice of the fact of the down payment. The fact that there had been a down payment on the property which created a vendee's lien should have implicitly understood because of the past dealings Crews had with Traditional. It is a matter of common knowledge, especially to one engaged in the building business, that 100% loan commitments are virtually non-existent, and this of itself should have been sufficient to put Crews on notice.

As the result of the testimony of Ira Crews, Jr. and the total involvement of Crews in the project both as a corporate entity and individually, notice must be imputed to Crews as there was certainly enough notice, actual and constructive, to excite the inquiry of a reasonably prudent man. Failure to inquire rendered Crews an incumbrancer with notice.

The lien of the vendee and of the mortgagee became valid on the same day, July 15, 1969, when the deed was executed and the property acquired by Traditional.

It is provided by 42 O.S.1971 § 15 that:

"Other things being equal, different liens upon the same property have priority according to the time of their creation. . . ."

Mortgage contracts are subject to all the provisions pertaining to liens. 42 O.S.1971 § 5.

An inchoate vendee's lien was created May 29, 1969, when the contract for construction of the house was signed. An incomplete mortgage lien existed as of July 7, 1969, when the mortgage was executed. Because of the chronological order in which the liens originated, the vendee's

lien of Palmer in the amount of $3,500.00 is prior and superior to the mortgage lien.

The judgment of the Court of Appeals is affirmed as to the materialmen's lien in the amount of $1,204.20. The judgment of the District Court and the Court of Appeals is reversed as applicable to the vendee's lien. The cause is remanded to the District Court with directions to find that Palmer's vendee's and materialmen's liens are prior and superior to the mortgage lien of Crews and proceed accordingly.

All Justices concur.