PALOVIK et ux. v. ABSHER et ux.

No. 32682. May 13, 1947.

Rehearing Denied June 17, 1947.

*181 P. 2d 989.*

Swank & Swank, of Stillwater, for plaintiffs in error.

Guy L. Horton, of Stillwater, for defendants in error.

OSBORN, J. This is an action for the specific performance of a contract for the sale of real estate, brought by plaintiffs, Henry J. Absher and Maurine Absher, against defendants, Joe Palovik and Marie Palovik. From a judgment for plaintiffs, defendants appeal.

There is no substantial dispute as to the essential facts. Defendants were the owners of a small tract of land with a house thereon near the city of Stillwater, and listed the same for sale with an agent named Clingenpeel. Clingenpeel sold this property to plaintiffs under a written contract for the sum of $2,000, in which was included the assumption by plaintiffs of a $1,200 mortgage. The contract provided for a down payment of $200 and for the payment by plaintiffs of $30 on the 1st day of October, 1941, and $30 on the first day of each month thereafter until eight more payments were made; a payment of $30 on the 1st day of October, 1942, and the payment of eight more monthly payments of $30 each during said year, and a similar provision for payments in 1943, the balance thereafter remaining due to be paid by two $30 payments, one on the 1st of October, 1944, and one on the 1st of November, 1944, and a payment of $18 on the 1st of December, 1944. Interest to be paid on the deferred payments at 7 per cent per annum, and interest to be paid on the $1,200 mortgage out of the sums paid monthly by plaintiffs.

The written contract did not provide for the rescission or cancellation thereof at the option of defendants if plaintiffs failed to comply with its terms, but did provide that in the event of default by plaintiffs to make any payment as stipulated therein, then, and in that event, all money paid in by plaintiffs should be forfeited to defendants absolutely as liquidated damages. It also provided that time was of the essence of the contract, and that upon full payment by plaintiffs defendants would deliver a good and sufficient warranty deed to the property together with an abstract showing good title thereto. This contract was apparently drawn by Clingenpeel, and he executed the same for defendants, signing their names thereto by himself as their agent.

Plaintiffs were without funds to make the first or down payment of $200 and borrowed the money from Clingenpeel, who was also in the business of loaning money, giving him their note secured by a mortgage on certain livestock, and upon the making of such payment the plaintiffs took possession of the property. Plaintiffs remained in possession until about June 1, 1942, then moved away, going to Comanche, Okla., for about a month, and then going to Texas, where plaintiff Henry J. Absher was employed in a war plant. After taking possession of the property plaintiffs made the following payments on the contract: September 27, 1941, $30; November 1, 1941, $18; December 6, 1941, $40; January 10, 1942, $20; February 7, 1942, $30; April 15, 1942, $30; June 30, 1942, $20; and November 5, 1942, $15. After the last payment above specified plaintiffs made no further payment on the contract until August 30, 1943, on which date they sent Clingenpeel a postal money order for $35. On September 29, 1943, they sent another money order for $40; on October 29, 1943, a money order for $40, and on December 2, 1943, a money order for $30. These money orders were received by Clingenpeel, but were not cashed by him for the reason that in the mean-

time defendants had returned to Stillwater and taken possession of the property. Henry J. Absher testified that he was certain that he had made some payments during the period between November, 1942, and August 30, 1943, but that he could produce no evidence to substantiate that belief. While the plaintiffs were absent in Texas, Clingenpeel rented the property for the sum of $10 per month, $9 of which he applied on the debt of plaintiffs to defendants, deducting the sum of $1 per month as his compensation for renting the property. The total amount of rentals so applied on plaintiffs' debt was $47.

Henry J. Absher testified that his failure to make payments in accordance with the terms of the contract was due to an accidental personal injury suffered by him, and financial difficulties suffered because of such injury; that he discussed his difficulties with Clingenpeel, who defendants had advised him was in full charge of the sale of the property, and that Clingenpeel agreed to excuse his failure to make regular payments under the contract until such time as he was financially able to do so, provided that plaintiffs would make sufficient payments to pay taxes and the interest on the mortgage.

After Henry J. Absher had mailed Clingenpeel the money orders above mentioned from Texas he failed to hear from Clingenpeel and made no further payments. He returned to Stillwater in the summer of 1944 and found defendants in possession of the property, which possession had been taken by them early in 1943, and was advised by defendants that they considered the contract canceled for the reason that they had received no money to apply on the purchase price of the property. At this same time Absher discovered that Clingenpeel had not cashed the money orders which he sent from Texas. It appears that Clingenpeel was then very ill, and that his books and records were in bad shape. In September, 1944, after Absher had returned to his work,

the money orders were mailed to him by Clingenpeel's attorney. Clingenpeel died shortly thereafter. Plaintiffs failed to come to any agreement with defendants in the matter and filed this action in February, 1945. Plaintiffs alleged a tender of all sums due under the contract and its refusal by defendants. No question as to tender is raised by defendants.

At the conclusion of all the evidence the trial court found that the plaintiffs were entitled to specific performance; that defendants had been in possession of the property for 34 months, and that the reasonable rental value of the property during that time was $20 per month, or a total of $680; that defendants had remortgaged the property in an amount $700 in excess of the original mortgage, and that the plaintiffs were entitled to judgment for these amounts, making in all the sum of $1,380; that defendants were entitled to a credit of $1,000 for improvements made on the premises, and for the sum of $348, being the balance due on the principal under the contract between the parties, and interest due under the contract on the sum of $134.71, or a total of $1,482.71, and that upon the payment by plaintiffs to defendants of the sum of $102.71 defendants should convey the premises to plaintiffs by a general warranty deed. The costs of the action were assessed against the defendants.

Defendants first contend that their demurrer to plaintiffs' petition should have been sustained, as the petition showed on its face that plaintiffs had not made the payments required by the contract and, therefore, were not entitled to specific performance for the reason that the petition showed them to be in default, and gave no legal excuse for such default.

The petition alleged that the payments made by plaintiffs were accepted by defendants, and that plaintiffs had no knowledge that defendants had repudiated their contract until 1944, although the defendants wrongfully entered into possession of the premises on about April 15, 1943. In the absence of a motion to make the petition more definite and certain, the allegations are sufficient to show that defendants, by accepting without objection the smaller payments made by plaintiffs, and by failing to object to the failure of plaintiffs to make their payments as specified in the contract, waived the default on the part of plaintiffs, so that before defendants could cancel the contract and take possession of the property it was incumbent upon them to notify plaintiffs of their intention to do so, and give plaintiffs an opportunity to remove their default.

In Moore v. Kelly, 57 Okla. 348, 157 P. 81, we held that under similar circumstances the vendor seeking to rescind such a contract must give notice of his intention to the vendee, and fix a certain and reasonable time within which the vendee could perform before the vendor could effectively cancel the contract. To the same effect is Simmons v. Harris, 108 Okla. 189, 235 P. 508.

In McCleary v. Brown, 190 Okla. 19, 119 P. 2d 830, 137 A.L.R. 1018, we held that where the facts giving rise to the defenses of waiver and estoppel were alleged, the parties so alleging them were entitled to the benefit of such defenses, although they were not specifically asserted.

Defendants urge that the contract provided that time was of the essence of the contract, and that no legal excuse for being in default was pleaded, and that therefore the petition was fatally defective, citing Vanlandingham v. Newberry, 104 Okla. 98, 230 P. 726, and Craig v. Chisholm, 183 Okla. 398, 82 P. 2d 986, in support of this argument. The factual differences in the cases cited by defendants render them inapplicable to the instant case. In Moore v. Kelly, supra, the contract provided that time was of the essence of the contract, but the court held that timely payment could be waived by the vendor regardless of such provision.

The trial court did not err in overruling defendants' demurrer.

Defendants' second and third contentions, that the defendants had a right to rescind, and that performance and good faith are prerequisite to a decree for specific performance, are largely governed by what we have said above. Undoubtedly, upon the failure of plaintiffs to make the agreed payments as provided in the contract, defendants had a right to rescind and apply the payments made as liquidated damages, and if they had done so promptly, it would have been necessary for plaintiffs to plead and prove performance in order to avoid the termination of the contract. However, as stated above, the delay on the part of defendants in taking any action looking to a rescission of the contract, because of the failure of performance by plaintiffs, waived the default and precluded a rescission by defendants until plaintiffs had first been given an opportunity to comply with the terms of the contract.

Defendants next contend that the agent, Clingenpeel, had no authority to waive strict performance of the contract by plaintiffs, or to excuse their default in making payments, and that if he did, defendants were not bound thereby. In support of this assertion they cite and rely upon 2 Am. Jur., Principal and Agent, sections 95, 103, 108 and 130, all referring to the extent of the authority of an agent and the limitations upon his apparent or implied authority.

Plaintiff Henry J. Absher testified that the entire transaction between him and defendants was conducted by Clingenpeel, and that about a month or two after he had moved into the premises, defendant Joe Palovik talked with him in Stillwater, at which time he advised Palovik that he had paid the $200 down payment to Clingenpeel, and that at that time Palovik advised him that he and his wife, Marie, were living in Tulsa, and that Clingenpeel would continue to handle the transaction for them; that he never saw either of the defendants thereafter until in the summer of 1944, and that all his payments were made to Clingenpeel, and that from the conversation with Palovik he understood that Clingenpeel was in complete charge of the sale of the property and the collection of the money. Palovik did not deny making such statement, and although he contended that he had never received from Clingenpeel any of the money paid to Clingenpeel by plaintiffs, he admitted that he never at any time prior to his re-entry into possession of the premises requested any accounting from Clingenpeel, or made any effort to ascertain whether or not plaintiffs had made payments as required by their contract. Defendants produced no evidence to show that Clingenpeel did not have such authority, but asserted the right to rescind solely because they had received no money from Clingenpeel to apply on the contract of sale. From the evidence it appears that the defendants entrusted the whole matter to Clingenpeel, whom they regarded as a competent business man, and in whose honesty and integrity they had unbounded confidence. From this evidence the trial court was justified in concluding that in the transaction Clingenpeel was the general agent of defendants, and that as such his waiver of strict compliance with the terms of the contract was binding upon them.

In 21 R.C.L. p. 853, §32, it is said:

"A general agent is usually authorized to do all acts connected with the business or employment in which he is engaged, while a special agent is only authorized to do specific acts in pursuance of particular instructions, or with restrictions necessarily implied from the act to be done."

To the same effect is 2 Am. Jur. p. 73, section 90, 2 C. J. p. 427, section 15, 2 C.J.S. p. 1036, section 3c.

In A. J. McMahan & Co. v. Hibbard, 182 Okla. 503, 78 P. 2d 409, it was contended that one Jones had no authority to act for McMahan & Co. in the exchange of stock in the Hearst Publica-

tions for building and loan stock owned by Hibbard. In that case we said:

"If defendant through the statements of its president, McMahan, led the plaintiff to believe that Jones was its agent, then the plaintiff was entitled to presume that Jones was its general agent with authority to make the exchange in question, in the absence of notice to the contrary, and the burden was upon defendant to show such notice. Continental Supply Co. v. Sinclair Oil & Gas Co., 109 Okla. 178, 235 P. 471. There the court held as follows: 'In the absence of notice to the contrary, a person dealing with an admitted agent may presume that he is the general agent and that he is acting within the scope of his authority; the burden being upon the principal to show notice of any limitation upon the agent's authority.' "

In R. V. Smith Supply Co. v. Stephens, 169 Okla. 555, 37 P. 2d 926, we said:

"An implied agency may be inferred from the acts and conduct of the parties and the circumstances surrounding the particular case, and, while it may be more convincingly inferable from a series of transactions, it may be, nevertheless, implied from a single transaction. Mounts v. Boardman Co., 79 Okla. 90, 191 P. 362; Smith v. Cornwell & Chowning Lumber Co., 101 Okla. 86, 223 P. 154; International Life Insurance Co. of St. Louis, Mo., v. Bradley, 114 Okla. 231, 246 P. 222.

"On this point we hold that one dealing with a known agent has a right to presume that the agency is general and not special and that the agent is acting within the scope of his authority and the principal will be bound by the act of the agent."

And in Rosser-Moon Furniture Co. v. Oklahoma State Bank, 192 Okla. 169, 135 P. 2d 336, after stating that apparent authority of the agent results from statements or conduct by the principal which justify third persons in believing that the agent is acting within his authority, we said:

"And the scope of such apparent authority is to be determined not only by what the principal actually does know

of the acts of the agent within the employment, but also by 'what he should, in the exercise of ordinary care and prudence, know the agent is doing in the agency transaction.' 2 Am. Jur. 84."

There being sufficient evidence to justify the conclusion that Clingenpeel was the general agent of defendants, plaintiffs were justified in believing that he had a right to bind the defendants by his waiver of strict compliance of the terms and conditions of the contract, and that his acts and conduct in that respect were binding upon the defendants. Apparently the defendants had absolute confidence in Clingenpeel, and, as above stated, for a long time made no effort to ascertain whether or not plaintiffs were complying strictly with the contract. Their failure to do so was probably due to their confidence in Clingenpeel and their own inexperience in business matters, but by the exercise of ordinary diligence, and by promptly requesting Clingenpeel to account to them for the moneys received from plaintiffs, they could easily have ascertained that plaintiffs were in default, and promptly acted to disavow the authority of Clingenpeel to acquiesce in such defaut. Their failure to do so may not now be urged by them to the prejudice of the plaintiffs, and we hold that the acts of Clingenpeel were and are binding upon them, and preclude them from urging the default of plaintiffs as a defense to the action.

Under their fifth and sixth contentions defendants urge that it would be inequitable to specifically enforce the contract, and that the contract cannot be enforced because it is indefinite. We fail to see where specific performance could result in inequity to the defendants, since the trial court allowed them the balance of the purchase price due, with interest, and the value of improvements placed upon the premises by them, but charged them with rent for the period during which they occupied the premises.

Nor do we think the contract indefinite. While it is true that the payments

required to be made by plaintiffs total more than the total consideration of $2,000 provided by the contract, it is clear that the payments included the interest upon the $1,200 mortgage, which was to be paid by plaintiffs. We find nothing in the contract which would preclude its specific enforcement.

Nor does the fact that a new mortgage was placed upon the property by defendants so change conditions as to render specific performance impossible. Plaintiffs must, of course, take the premises subject to the new mortgage, which apparently they are willing to do, and the court surcharged the defendants with the excess of the new mortgage over the old. If plaintiffs are willing to take the property under the conditions specified in the court's decree, we see no good reason for denying them that privilege because of a change in conditions brought about by the unauthorized acts of defendants.

Defendants also contend that the contract of purchase is void because their agent, Clingenpeel, loaned the plaintiffs $200 with which to make the first down payment on the property. Defendants contend that this made Clingenpeel the agent of plaintiffs without the knowledge of defendants, and, therefore, nullified the contract, citing Brockman v. Delta Mfg. Co., 184 Okla. 357, 87 P. 2d 968, and other authorities to the effect that where one acts as an agent for both parties in making a contract, the contract is voidable upon the application of either party.

We are unable to agree that the mere loan of money made by Clingenpeel to the plaintiffs upon a security other than the property involved herein made Clingenpeel the agent of plaintiffs in any sense. No authority so holding is cited by defendants, and we know of none.

Plaintiffs concede that the trial court erred in computing the amount due from plaintiffs to defendants under the contract, and that the money judgment rendered in favor of defendants and against plaintiffs should be increased from $102.71 to $544.53, less the cost of an abstract which, according to the terms of the contract, should be paid by defendants. The evidence does not disclose what an abstract upon the property would cost.

The judgment, insofar as it grants specific performance, is affirmed, but otherwise same is vacated with directions to the trial court to render judgment against the plaintiffs for the sum of $544.53, with interest at the rate of 7 per cent per annum from November 30, 1945, until paid, less the reasonable cost of an abstract upon the property, which shall be determined by the trial court from evidence which the parties may produce at a hearing if the amount cannot be agreed upon, and to require the plaintiffs to pay the balance owing defendants, after deducting the cost of said abstract, into court within 20 days from the date such judgment is entered, the defendants, upon such payment being made, to execute a good and sufficient warranty deed to plaintiffs subject to the mortgage of $1,900 now upon the property; if plaintiffs fail to make such payment into court within the time specified, the action to be dismissed with prejudice at the cost of plaintiffs.

HURST, C.J., DAVISON, V.C.J., and WELCH, CORN,, and GIBSON, JJ., concur.