Edwin Korleski, Plaintiff-Appellee, v. Lorraine Needham, Administrator of the Estate of Harold E. Needham, Deceased, and Shaw-Barton Company, Inc., a Corporation, Defendants-Appellants.

Gen. No. 65–141.

Second District.

December 20, 1966.

Knight and Knight, of Rockford, for appellant.

Miller, Thomas, Hickey & Collins, of Rockford, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This appeal is prosecuted from a judgment against the defendant, Shaw-Barton Company, Inc., a corporation, in the amount of $25,000, entered on a jury verdict, for personal injuries and property damage suffered by the plaintiff, Edwin Korleski, as a result of an accident allegedly caused by an agent of the defendant during the course of his employment.

The complaint, filed August 22, 1963, originally contained two counts. Count I was against Lorraine Needham, as Administrator of the Estate of Harold E. Needham, deceased, and charged that as a direct and proximate result of the careless and negligent conduct of Harold E. Needham a collision occurred between an automobile driven by Needham and one driven by the plaintiff. The alleged negligence of Needham was specified as failure to maintain a proper lookout for plaintiff's automobile; operation of his auto at a high and dangerous rate of speed; and violation of sections 70 and 86 of the Uniform Act Regulating Traffic on Highways in that he failed to obey a stop sign at the intersection where the collision occurred.

Count II repeated the allegations of Count I and further charged that at the time of the collision Needham was "then and there in the employ of the defendant, Shaw-Barton Company, Inc., a corporation, as its agent, servant or employee and at the time of the occurrence herein complained of, said Harold E. Needham was in the course of his employment as such agent, servant or employee. . . ."

Both counts alleged plaintiff's freedom from contributory negligence, pain and suffering, permanent and last-

ing personal injuries, loss of profits, and sizable obligations for medical care and attention, and prayed for judgment in the amount of $50,000 against each defendant.

Count I was dismissed before trial as a result of an apparent settlement with that defendant and does not concern us here. Shaw-Barton filed an answer to Count II that contained a general denial and a further allegation that the negligence that caused the accident, if any, was on the part of the plaintiff or "some third person, firm, or corporation, their agents, servants or employees, over whom defendant had no control . . ." The plaintiff filed a formal reply to this answer that denied the additional allegations.

On June 4, 1965, pursuant to order of court, the complaint was amended to include a Count III against Shaw-Barton that repeated the allegations of the earlier pleadings and added a paragraph in regard to property damage to Korleski's car. On June 8, 1965, Shaw-Barton filed an answer to the new Count that contained a further allegation identical to that used against Count II. No reply to this answer was filed until July 30, 1965, several weeks after the trial.

The record indicates that the accident occurred at approximately 7:10 p. m. on November 8, 1962, at the intersection of Belvidere Road and White Pigeon Road in Boone County. The plaintiff was traveling in a northwesterly direction on Belvidere Road on his way home to Rockton from Sycamore. He was driving about 50 to 55 miles per hour, or about 10 miles below the posted speed limit. The road was clear and dry. When he was approximately 60 to 70 feet from the intersection of White Pigeon Road, he noticed dim lights to his left. White Pigeon Road intersects Belvidere Road on a diagonal at this point and continues in a northeasterly direction. The next thing that the plaintiff remembered was that Needham's car was directly in front of him and

the collision occurred. Photographic exhibits, introduced by the defendant during cross-examination, and the testimony of the plaintiff, indicate that there were stop signs on White Pigeon Road on both sides of its intersection with Belvidere. There were no stop signs for traffic on Belvidere itself. The plaintiff also stated that he heard no horn or other warning; that Needham's car was traveling about eighty miles an hour at the time of the impact; and that it had not stopped at the intersection. After the collision, Needham's car continued for 87 feet and sheared off the stop sign on the opposite side of the road. Needham died in an ambulance shortly after the accident.

Three doctors testified for the plaintiff relative to his injuries. Korleski himself was the only other witness to testify. The defendant rested at the conclusion of plaintiff's case and offered no witnesses of its own.

The defendant bases this appeal on seventeen separate instances of reversible error on the part of the trial court. However, many of the instances of alleged error, if not all, are predicated on the points herein discussed so that the essence of this appeal can be considerably shortened. Defendant first urges that the trial court committed fatal error in its denial of its motion for a directed verdict at the conclusion of the evidence and to arrest judgment since neither the pleadings or evidence was sufficient to sustain the verdict. In our consideration of this point, it would be appropriate to also examine defendant's contention that a certain settlement contract between Shaw-Barton and the Estate of its deceased employee, Needham, was improperly admitted into evidence.

At the very outset of the trial, over the repeated objections of defendant, the trial court admitted into evidence for the purpose of proving an admission against interest on the part of Shaw-Barton, an Industrial Commission of Illinois Settlement Contract between Lorraine E. Needham as widow of Harold E. Needham, deceased,

Petitioner, and Shaw-Barton, Inc., Respondent, and approved by the Commission on February 14, 1964. That contract recited, in part, as follows:

"That on the 8th day of November, 1962, Harold E. Needham of 330 Highland Avenue, Algonquin, Illinois, was killed in an accident that arose out of and while in the employment of Shaw-Barton, Inc. . ."

The defendant contends that the admission of that document was improper since it did not constitute an admission against interest. We do not agree with this contention.

■ ■ Any statement, oral or written, voluntarily made by a party to an action that contradicts the position taken by that party may be introduced into evidence as an admission against interest if it is pertinent to the issues of the case. Nelson v. Union Wire Rope Corp., 31 Ill2d 69, 115, 199 NE2d 769 (1965); Susemiehl v. Red River Lumber Co., 306 Ill App 430, 435–441, 28 NE2d 743 (1940).

In the recent case of Bassi v. Morgan, 60 Ill App2d 1, 4–6, 208 NE2d 341 (1965) the Appellate Court considered a case that involved a suit brought by a passenger against the driver of an automobile for injuries suffered in an accident caused by his allegedly wilful and wanton conduct. The defendant charged that at the time of the accident the plaintiff was his employee in the course of her employment and that her only relief was under the Workmen's Compensation Act. As proof of this allegation, defendant sought to admit into evidence the plaintiff's application for adjustment of claim before the Industrial Commission of Illinois. The reviewing court, in reversing the judgment, held that the application should have been admitted into evidence as an admission against interest.

■ The admission itself was not conclusive as a matter of law against the defendant. It was properly

before the jury to aid it in its final determination but was subject to such rebuttal as defendant saw fit to introduce against it. However, the contract was, of itself, sufficient evidence to establish a prima facie case in favor of the plaintiff on the issue of the agency.

The plaintiff testified that at the time of the accident he was driving approximately 10 miles per hour under the legal speed limit. He was familiar with the intersection and had traveled on Belvidere Road "many times" previously. The road was clear and dry and his headlights were on. Suddenly, Needham's automobile "lit right out" and the two vehicles collided. He further stated that Needham was driving through the intersection "about eighty miles an hour" and that he did not sound a warning or make any effort to stop.

█ The defendant made no effort to counter the testimony of Korleski or rebut the evidence that Needham was, at the time of the accident, an employee of Shaw-Barton and in the course of his employment. Under the circumstances, there can be no question about the propriety of the trial court's refusal to direct a verdict against the plaintiff or in refusing to arrest the judgment. The plaintiff had clearly introduced sufficient evidence to establish a prima facie case. Brill v. Davajon, 51 Ill App2d 445, 449, 450, 201 NE2d 253 (1964). The record also discloses that the further contentions of the defendant that the plaintiff was guilty of contributory negligence and that the verdict was against the manifest weight of the evidence was without merit.

█ The defendant further complains that Dr. Parker C. Hardin, a witness for the plaintiff, was improperly permitted to express his conclusions as to the nature of the plaintiff's injuries and their probable duration. Dr. Hardin had examined the plaintiff eleven days before the trial for the purpose of testifying and had not treated Korleski at any time. Ordinarily, an examining physician cannot base his opinions on the subjective complaints of

the injured party unless he has also treated the party for those injuries. National Malleable Steel Castings Co. v. Industrial Commission, 377 Ill 169, 36 NE2d 249 (1941); Gaydos v. Peterson, 300 Ill App 219, 226, 20 NE2d 837 (1939). The expert opinion of an examining physician is not disqualified, however, merely because he has taken a history of the injuries if the opinion itself is based on his objective examination. Crane Co. v. Industrial Com., 32 Ill2d 348, 353, 354, 205 NE2d 425 (1965). The record indicates that Dr. Hardin thoroughly examined Korleski and that his opinions were based on that examination and a complete set of x rays taken under Hardin's direction. Error was committed by the trial court in permitting Dr. Hardin to review the history taken from Korleski relative to the accident and injuries sustained. The admission of incompetent testimony by a physican does not justify a reversal where his testimony is merely corroborative of matters already proven by other evidence. Becherer v. Best, 74 Ill App2d 174, 219 NE2d 371, 375 (1966); Greinke v. Chicago City Ry. Co., 234 Ill 564, 574, 85 NE 327 (1908). In this case all that Dr. Hardin testified to had been previously admitted into evidence by other competent testimony.

■ Defendant next urges that the failure of the plaintiff to reply to his affirmative defense contained in his answer to Count III of the Amended Complaint amounted to an admission of the truth contained therein. Count III, as we have seen, related to property damage suffered by the plaintiff. A similar "affirmative defense" had been contained in defendant's answer to Count II and was countered by a timely reply from the plaintiff. The trial court was clearly acting within the realm of its discretion by permitting plaintiff to file its reply after the trial was concluded.

■ In any event, the alleged affirmative defense raised no new issue that we can determine and was merely an argumentative denial of the complaint. It

has been held that allegations in an answer which are merely an argumentative, not an affirmative defense, do not require a reply. Mandel v. Jordan, 57 Ill App2d 276, 277, 207 NE2d 12 (1965).

■ Defendant also charges that the court erred in giving plaintiff's instructions 5, 7, 9, 11, 14 and 15, and that, as a result, the jury was incorrectly instructed as to the law governing the case. It is apparent from the record, however, that the defendant made no specific objections to these instructions either at the conference on instructions or in his post-trial motions. It is well established that a reviewing court will not consider alleged error in the giving of instructions unless specific objections to the instructions have been made before the trial court. Prignano v. Mastro, 61 Ill App2d 65, 76, 77, 209 NE2d 12 (1965) ; Vasic v. Chicago Transit Authority, 33 Ill App2d 11, 11p–11r, 180 NE2d 347 (1961).

■ Lastly, we consider defendant's contention that the Court wrongfully refused to give the jury its instructions 8, 31, 32, 33, 35, 36, 37, 40 and 41. Defendant's instruction 8 was concerned with the impeachment of a witness and was properly refused since there was no evidence before the jury remotely connected with an impeachment. Defendant's instructions 31, 32, and 33 embodied correct statements of the law of agency but that law was also contained in plaintiff's instructions 9 and 11 which were given to the jury for its deliberations. Defendant's instructions 35, 36, and 37 involved the Illinois statutes regulating traffic on Belvidere and White Pigeon Roads at the time of the accident. They were refused as a group by the trial court since no reference was made to the stop sign at the intersection controlling traffic on White Pigeon Road. Under the circumstances we agree with the court that the instructions might have misled the jury on that point and feel that they were properly refused. Instructions 40 and 41 repeated material covered by plaintiff's instructions that had been given

without objection from defendant. Taken as a whole, the instructions given to the jury properly informed them as to the law pertinent to the case and we do not agree that the defendant was deprived of a fair trial or prejudiced in any way.

We do not consider here several other errors alleged by defendant as they are of insufficient merit to warrant a prolongation of this opinion.

For the reasons enumerated, the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN, P. J. and DAVIS, J., concur.