607 P.2d 1055

**Larry TOMMERUP and Dorthy Tommerup, husband and wife, Plaintiffs-Appellants,**

v.

**ALBERTSON'S, INC., a corporation, Defendant-Respondent.**

No. 12621.

Supreme Court of Idaho.

Feb. 5, 1980.

Rehearing Denied March 31, 1980.

**2**

Donald J. Chisholm of Goodman, Duff & Chisholm, Rupert, for plaintiffs-appellants.

Robert G. Jones of Quane, Smith, Howard & Hull, Boise, for defendant-respondent.

DONALDSON, Chief Justice.

Plaintiffs-appellants, Mr. and Mrs. Tommerup, filed suit against defendant-respondent, Albertson's Inc., for personal injuries sustained by Mrs. Tommerup in a slip and fall accident in the parking lot of an Albertson's grocery store in Twin Falls, Idaho. The case was tried before a jury in February of 1977 after the district court had denied motions of both parties for summary judgment. The jury returned a verdict in favor of defendant, finding that defendant was not negligent in the action. Judgment was entered in accordance with the verdict and plaintiffs have appealed that judgment.

The record at trial disclosed the following facts. On Sunday, September 17, 1972, Mrs. Tommerup upon exiting an Albertson's grocery store in Twin Falls slipped and fell on a cupcake wrapper which apparently had been discarded in the parking lot near the doorway of the grocery store. The parking lot and grocery store were controlled solely by the defendant-respondent. This slip occurred as Mrs. Tommerup was leaving the premises after purchasing groceries in the store. Mrs. Tommerup suffered injury to her right foot in the fall. The incident was immediately reported to the assistant store manager.

There was no direct evidence as to who deposited the cupcake wrapper near the door. The evidence did show that Albertson's sold its own bakery goods in the store and also commercially-packaged bakery goods. Albertson's did not maintain trash containers near the doorway of its store. Plaintiffs introduced exhibits which showed that at the time the action came to trial, similar stores in the area maintained such trash containers near the doorways of their stores. Although store personnel were instructed to pick up paper and debris outside the store as they saw it, the only regularly scheduled inspection and cleanup of the concrete apron and parking lot in front of the store took place between midnight and 6:00 o'clock a. m. On the above evidence, the jury returned a verdict in favor of the defendant.

The following facts were not disclosed to the jury at trial but were presented by the plaintiffs in their motion for summary judgment and as an offer of proof at trial. On September 21, 1972, four days after the accident, an agent for Albertson's wrote to Mrs. Tommerup asking her to submit bills incurred as a result of the accident. Mrs. Tommerup replied to the letter and questioned how she should evaluate items of damage which did not represent out-of-pocket medical expenses. The agent for Albertson's replied it was willing to accept all bills in reference to the accident, and that, when Mrs. Tommerup was "in a posi-

tion to finalize the claim," it would "work directly with [her]." Mrs. Tommerup stated that on receipt of the letter she believed that Albertson's had admitted liability for all purposes and had agreed to settle the general damages when those damages could be ascertained. The Tommerups at this time did not consult an attorney as to their rights with respect to the accident.

From September, 1972, through January, 1975, Albertson's paid out some $3,800 in medical expenses for the injuries of Mrs. Tommerup. An additional $673 was paid through the month of November, 1975. At that time Albertson's advised the Tommerups that no further payments would be made on their claim. The Tommerups then sought legal advice and now argue that they were lulled into a situation in which they were unable to reconstruct adequately the details of the accident.

The above facts were presented to the court by plaintiffs' motion for summary judgment on September 22, 1976, which motion was denied. Plaintiffs again presented the same set of facts in an offer of proof at trial for the purpose of showing an admission of liability or estoppel to deny liability on the part of defendant-respondent Albertson's.

### I

The Tommerups first assign as error the instructions given by the trial court on the issue of liability of an owner or possessor of land for injuries caused by a dangerous condition on the premises. The jury was instructed that mere proof of the existence of a defective condition does not, in itself, establish negligence; among other things, it must additionally be shown that the owner or possessor had actual or constructive knowledge of the defect and failed to remove or correct it as soon as would have been done in the exercise of ordinary care.

The first issue presented on appeal is whether, before an owner or possessor of land is liable for injury to an invitee caused by a defective condition on his land, it must be shown that the owner or possessor had actual or constructive knowledge of the defective condition.

We answer the question in the affirmative. The law is well settled in this state that, to hold an owner or possessor of land liable for injuries to an invitee caused by a dangerous condition existing on the land, it must be shown that the owner or occupier knew, or by the exercise of reasonable care should have known, of the existence of the dangerous condition. *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974); *Giles v. Montgomery Ward Co.*, 94 Idaho 484, 491 P.2d 1256 (1971); *Otts v. Brough*, 90 Idaho 124, 409 P.2d 95 (1965); *Martin v. Brown*, 56 Idaho 379, 54 P.2d 1157 (1936).

Appellants urge this Court to adopt a much stricter standard in the determination of a landowner's (or possessor's) duty to his invitees. In their view, the requirement of proving the owner's or possessor's knowledge (either actual or constructive) imposes an unjust hardship on the plaintiff in a slip and fall case such as this. They contend the plaintiff is in a very difficult position to carry the burden of proof on the issue because he usually has no prior knowledge of the condition, is surprised and upset by the accident, and therefore unable to gather evidence to prove how long the condition existed, does not know of the proof requirement at the time when evidence could best be gathered, and most of the people who are best able to supply the evidence are employees of the proprietor with an interest adverse to the plaintiff.

Although these contentions may at times be correct, they fail to address the real issue. The knowledge requirement did not arise out of consideration of the parties' respective difficulties in proving the facts at trial. The correct analysis has been stated before:

"The owner is not an insurer of such [invitees] . . . . Nor is there any presumption of negligence on the part of an owner or occupier merely upon the showing that an injury has been sustained by one while rightfully upon the premises. *The true ground of liability is*

the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. [*Mautino v. Sutter Hospital Association*, 211 Cal. 556, 296 P. 76 (1931)]." *Martin v. Brown*, 56 Idaho at 382, 54 P.2d at 1158. (emphasis ours) Because the true ground of liability is the superior knowledge of the owner or possessor, we fail to see any justification for holding him liable for injury caused by defects about which he had *no* knowledge, when the lack of knowledge was not due to a failure by the owner or possessor to use ordinary care.

Appellants argue, however, that the nature of respondent's business was such that it created a reasonable probability that the dangerous condition would arise in the normal course of business, and that respondent's actual or constructive knowledge of the specific defect need not have been proved.

Appellants cite *Jasko v. F. W. Woolworth Co.*, 177 Colo. 418, 494 P.2d 839 (1972) in support of their argument. That case, however, is readily distinguished on its facts. In *Jasko*, the plaintiff was injured in the defendant's store when she slipped on a slice of pizza which was on the terrazzo floor. An associate manager of the store testified that 500–1,000 individuals per day purchased one or more slices of pizza at the pizza counter. There were no chairs or tables by the counter. Many customers stood in the aisle and ate the pizza from the waxed paper sheets upon which they were served. When pizza was being consumed, porters "constantly" swept up debris from the floor.

In reversing an order granting defendant's motion for summary judgment, the Colorado Supreme Court held defendant's method of selling pizza was one which led inescapably to such mishaps as that of the plaintiff, and in such a situation conventional notice requirements (i. e. actual or constructive knowledge of the *specific* condition) need not be met. The court there stated:

"The practice of extensive selling of slices of pizza on waxed paper to customers [to] consume it while standing creates the reasonable probability that food would drop to the floor. Food on a terrazzo floor will create a dangerous condition. In such a situation, notice to the proprietor of the specific item on the floor need not be shown. . . ."

The court further stated:

" 'The mere presence of a slick or slippery spot on a floor does not in and of itself establish negligence, for this condition may arise temporarily in any place of business. [Cite] Nor does proof of a slippery floor, without more, give rise to an inference that the proprietor had knowledge of the condition. [Cite] *But we are not dealing with an isolated incident.*' " *Jasko v. F. W. Woolworth Co., supra*, 494 P.2d at 840.

The record in the instant case is devoid of evidence indicating the condition which caused appellant's injury to have been other than an isolated incident.

Under appellants' proposal, liability could be imposed upon a defendant storeowner if a customer, shopping in its store, discarded a piece of litter in an aisle upon which a second customer slipped and fell five seconds later. This despite no opportunity, reasonable or otherwise, for the defendant to prevent such an occurrence. We decline appellants' invitation to foster such an unreasonable result. The instruction given by the trial court on the issue of respondent's knowledge of the dangerous condition was correct.

II

Appellants next argue the trial court erred in instructing the jury that there is no duty on the part of the owner to warn the invitee of obvious and ordinary risks attendant on the use of the premises, and that the owner is under no duty to reconstruct or alter the premises so as to obviate such known or obvious dangers. We find *no error*. The duty to keep the premises safe for an invitee only requires the exercise of ordinary care, and does not

extend to dangerous conditions which are known to the invitee, or which are or by the exercise of ordinary care should have been observed by the invitee. *Otts v. Brough, supra.* In the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. Prosser, Handbook of the Law of Torts, § 61, p. 394.

### III

Appellants next assign as error the trial court's denial of their motion for partial summary judgment. Appellants moved for summary judgment on the issue of liability

"on either or both of the following grounds:

1. That the defendant Albertsons, Inc., has admitted liability to the plaintiffs.
2. That the conduct of the defendant in assuming the obligation to pay medical expenses and other damages . . . for more than three years after the accident before denying liability . . . has so seriously prejudiced the plaintiffs in gathering and retaining evidence to support . . . liability that . . . defendant is estopped from denying liability. . . .

. . . To the extent it may be necessary for plaintiffs to amend their pleadings to conform to the evidence of estoppel plaintiffs so move."

On appeal, appellants argue that under promissory estoppel, equitable estoppel, or quasi estoppel, their motion for summary judgment on the issue of liability should have been granted.

*Promissory* estoppel, as opposed to equitable estoppel or quasi estoppel, is inapplicable in this appeal. The complaint set forth claims in tort only and promissory estoppel is a contract doctrine pertaining to the enforceability of contracts otherwise lacking consideration. Appellants' motion to amend their pleadings "to conform to the evidence of estoppel" must be read in conjunction with the second stated ground for their motion for summary judgment, which addressed the conduct, as opposed to any promise, of respondent. The issue of promissory estoppel was not raised below and will not be considered now. *Heckman Ranches, Inc. v. State, By and Through Dept. of Public Lands,* 99 Idaho 793, 589 P.2d 540 (1979).

With respect to appellants' claim that their motion for summary judgment should have been granted on the theories of equitable estoppel or quasi estoppel, it is clear that the trial court's denial thereof was correct. As we stated in *City of Nampa v. Swayne,* 97 Idaho 530, 547 P.2d 1135 (1976), the application of equitable estoppel is dependent upon a case by case analysis of the equities involved. 97 Idaho at 534, 547 P.2d at 1139. The equities in the instant case support the trial court's ruling. The conduct by respondent which appellants argue should support an estoppel on the issue of liability consisted of (1) a letter which read, in pertinent part,

"[W]e are willing to accept all of the bills in reference to this accident. When you are in a position to finalize the claim, we most certainly will work directly with you as we prefer working with our customers by mail if at all possible."

and (2) payment by respondent of appellants' medical bills and certain household bills for a period of about three years.

In the case of *Bjornstad v. Perry,* 92 Idaho 402, 443 P.2d 999 (1968), this Court stated:

"Equitable estoppel generally requires that a false representation or concealment of a material fact be made with actual or constructive knowledge of the true state of facts; that the party to whom the false representation was made was without knowledge or the means of acquiring knowledge of the real facts; that the false representation was made with the intent that it be acted upon; and that the party to whom it was made relied and acted upon it to his prejudice." 92 Idaho at 405, 443 P.2d at 1002.

All of the above factors are of equal importance and there can be no estoppel absent any of the elements. *Idaho Title Company v. American Insurance Company*, 96 Idaho 465, 531 P.2d 227 (1975); *Alder v. Mountain States Tel. & Tel. Co.*, 92 Idaho 506, 446 P.2d 628 (1968). It is difficult to see how respondent could be said to have made a false representation or concealment of any material fact in the instant case. The only statements made by the respondent relevant to this case were that it was "willing to accept all of the bills in reference to [the] accident," and that, when appellants were in a position to "finalize the claim," it would "work directly" with them. There is nothing in the record to indicate that at the time the statement was made, respondent was *not* willing to accept the bills or to work directly with the appellants in settling the claim. It was only after respondent had paid appellants some $3,800 over a three-year period that it became *un*willing to accept further bills, and at that time appellants were so informed.

■ Appellants further contend, however, that no misrepresentation or reliance need be shown, as the case falls within the parameters of "quasi estoppel." We disagree. To constitute quasi estoppel, the person against whom the estoppel is sought must have gained some advantage for himself, produced some disadvantage to the person seeking the estoppel, or induced such party to change his position; in addition it must be unconscionable to allow the person against whom the estoppel is sought to maintain a position which is inconsistent with the one in which he accepted a benefit. *Dawson v. Mead*, 98 Idaho 1, 557 P.2d 595 (1976); *KTVB, Inc. v. Boise City*, 94 Idaho 279, 486 P.2d 992 (1971).

The first element of quasi estoppel is the initial taking of a position by the party against whom the doctrine is to be applied. Respondent stated its willingness to accept appellants' bills, and actually paid such bills

for a three year period. Whether this conduct amounted to a "taking of a position" by respondent that it was admitting liability, so as to support appellants' argument for application of quasi estoppel, is doubtful. While respondent's statement that it would "work directly with" appellants when they were "in a position to finalize the claim" arguably supports appellants' contention, it is equally reasonable to construe the statement as indicating only that respondent's "position" was that it was willing to seek some mutually acceptable arrangement whereby appellants' financial burden arising from the incident could be alleviated.[1]

■ However, we need not decide which construction is compelled in this case, because even if we were to assume, arguendo, that a position of admitting liability was taken by respondent, there is no indication that respondent obtained any benefit, or caused appellants any injury, such that it would be unconscionable to allow respondent to assert its position of non-liability at trial. In *KTVB v. Boise City*, 94 Idaho 279, 486 P.2d 992 (1971), this Court discussed the doctrine of quasi estoppel at some length. There the Court reaffirmed its approval of the following:

> " 'The doctrine classified as quasi estoppel has its basis in election, ratification, affirmance, acquiescence, or acceptance of benefits; and the principle precludes a party from asserting *to another's disadvantage*, a right inconsistent with a position previously taken by him. The doctrine applies where it would be *unconscionable* to allow a person to maintain a position inconsistent with one in which he acquiesced or of which he accepted a benefit.' " [Quoting from *Clontz v. Fortner*, 88 Idaho 355, 364–365, 399 P.2d 949, 954 (1965)]. (emphasis ours) 94 Idaho at 281, 486 P.2d at 994.

---

1. We note that one of the two stated grounds in appellants' motion for partial summary judgment was "[t]hat defendant Albertson's, Inc., has admitted liability to the plaintiffs." However, there is nothing in appellants' brief addressing the question whether respondent's statements, in and of themselves, constituted legally binding *admissions* of liability. We therefore express no opinion on that issue.

The Court went on to quote with approval the following from *Godoy v. Hawaii*, 44 Haw. 312, 354 P.2d 78 (1960):

" 'This class of estoppel is . . . based upon the broad equitable principle which courts recognize, that a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position or conduct *to the injury* of another. To constitute this sort of estoppel *the act of the party against whom the estoppel is sought must have gained some advantage to himself or produced some disadvantage to another; or the person invoking the estoppel must have been induced to change his position . . . .' " (emphasis ours) 94 Idaho at 281, 486 P.2d at 994.

In the instant case, there has been no showing of any unconscionable retention of benefit by respondent. Although the statute of limitations had run on appellants' claim before this action was filed, respondent did not assert the statute as a defense. Appellants were given the opportunity to litigate fully the issue of liability, despite the running of the statute, and the jury found against them. It would be anomalous to hold that respondent, by paying appellants over $3,800, gained any advantage, or placed appellants at any disadvantage, when it has been determined at a full trial on the liability issue that respondent was under no obligation to pay appellants anything.

Appellants argue, however, that the statement made by respondent and its payment of the bills over the three-year period led them to believe liability would not be contested, and that as a result they lost the opportunity to gather evidence effectively and to reconstruct the details of the accident. They claim this possible loss of opportunity constitutes a disadvantage to them which supports application of quasi estoppel against the respondent. We disagree. To adopt the position of appellants would require that we first assume there was in fact more evidence to be gathered at some earlier time. That assumption made, we are then asked to go still further and assume also that such evidence would have been favorable to appellants and adverse to respondent. We decline to engage in this compound conjecture; application of quasi estoppel cannot be based on so infirm a foundation.

For the foregoing reasons, we find no error in the trial court's denial of appellants' motion for summary judgment. To hold otherwise would virtually eliminate the commendable practice of parties attempting to reach equitable solutions on their own. It has always been the policy of the law to favor compromise and settlement; and it is especially important to sustain that principle in this age of voluminous litigation. *Mustang Equipment, Inc. v. Welch*, 115 Ariz. 206, 564 P.2d 895 (1977); *Dansby v. Buck*, 92 Ariz. 1, 373 P.2d 1 (1962); *Kroetch v. Empire Mill Co.*, 9 Idaho 277, 74 P. 868 (1903). We decline to hold that financial assistance to an injured party places a lock on liability.

IV

In a related issue, appellants challenge the ground upon which the trial court refused to allow in evidence testimony that respondent paid Mrs. Tommerup's medical bills and certain household expenses for the three-year period after the accident. The trial court refused to allow this evidence before the jury on the ground that I.C. § 41–1840 absolutely barred consideration of such evidence. The statute provides:

"(1) No payment or payments made by any person, or by his insurer by virtue of an insurance policy, on account of bodily injury or death or damage to or loss of property of another, shall constitute an admission of liability or waiver of defense as to such injury, death, loss or damage, or be admissible in evidence in any action brought against the insured person or his insurer for damages, indemnity or benefits arising out of such injury, death, loss or damage unless pleaded as a defense to the action.

(2) All such payments shall be credited upon any settlement with respect to the same damage, expense or loss made by, or judgment or award rendered therefor in

such an action against, the payor or his insurer, and in favor of any person to whom or on whose account payment was made." I.C. § 41–1840.

 Appellants argue that the statute is applicable only to payments made to another by an insured and that, whereas respondent is self-insured for liability up to $100,000, the statute is inapplicable to this case (notwithstanding the fact that respondent is insured by an independent company for any liability over and above that amount). We find the contention without merit. Although the language of the statute refers at times to "any person" and at times to "the insured," we are of the opinion that the purpose of the provision is to encourage any defendant, insured or otherwise, to assist an injured adversary in alleviating any losses suffered without the fear of providing an admission which could result in the imposition of liability. Accordingly, we hold the statute applicable whether the person making such payments be insured or not. We note in passing that even if the statute were held applicable only to payments made by an insured, whereas the amount sought by appellants in this case exceeded the amount up to which respondent was self-insured by some $400,000, respondent did in fact have the status of an "insured." The trial court's application of I.C. § 41–1840 to the case at bar, precluding admission into evidence of the payments made by respondent, was correct.[2]

### V

Respondent in this action has also urged on appeal that the trial court erred in giving a particular instruction and in admitting certain exhibits in evidence. Since respondent was the prevailing party at trial and has filed no cross-appeal in this cause, it is not necessary to decide these issues and we express no opinion as to their validity.

Affirmed.

SHEPARD, J., and DUNLAP, J. Pro Tem., concur.

BAKES, Justice, dissenting:

I agree with the majority's analysis that the trial court did not err in denying appellant's motion for summary judgment on the various estoppel theories. As the majority has pointed out, the conduct of Albertson's was equivocal, and therefore the trial court was correct in ruling that appellants were not entitled to a partial summary judgment on the issue of liability as a matter of law. However, the court below did not try the estoppel issues but only tried the question of respondent Albertson's negligence. Since the evidence concerning the estoppel claims of appellant was disputed, the trial court certainly would not have been justified in granting summary judgment in favor of Albertson's on those issues. However, as a result of the way the case was tried below that is precisely what occurred. The appellants did not receive a trial on their estoppel issues. The judgment below should be reversed and remanded for a new trial on all the issues raised by the appellants' pleadings.

I am also inclined to agree with Justice Bistline that the letter which Albertson's wrote should have been admitted at trial on the basis that it was evidence of an admission against interest unrelated to any payments, evidence of which, of course, would not have been admissible under I.C. § 41–1840.

BISTLINE, Justice, dissenting.

The pivotal issue in this case is the exclusion from evidence of the letters and payments from Albertson's to the Tommerups. Four days after the accident, Albertson's wrote Mrs. Tommerup the following: "If you incur any expenses, or have been damaged, as a result of this incident, we will appreciate your forwarding itemized bills for our consideration." Subsequently, Albertson's wrote Mrs. Tommerup:

"We do wish to advise that we are willing to accept all of the bills in reference to

---

2. Appellants have not raised the question whether I.C. § 41–1840 precludes admission into evidence of payments only but not prom-

ises to pay, and we therefore draw no distinction here.

this accident. When you are in a position to finalize the claim, we most certainly will work directly with you as we prefer working with our customers by mail if at all possible."

Over the next three years Albertson's paid the Tommerups over $4,000. Both the letters and the payments should have been admitted on two grounds: (1) as admissions of liability and (2) as evidence on the issue of estoppel.

Generally, "[a]ny statement, oral or written, voluntarily made by a party to an action that contradicts the position taken by that party may be introduced into evidence as an admission against interest if it is pertinent to the issues of the case." *Korleski v. Needham*, 77 Ill.App.2d 328, 222 N.E.2d 334, 338 (1966). "Where a letter contains declarations and admissions against the interest of the writer, it is admissible." *Malcolm v. Hanmer*, 64 Idaho 66, 81, 127 P.2d 331, 337 (1942). *Accord*, 31A C.J.S. *Evidence* § 272 (1964). The statement need bear on the issue only incidentally or circumstantially in order to be competent as an admission against interest. *Nungaray v. Pleasant Valley*, 142 Cal.App.2d 653, 300 P.2d 285 (1956); *Greyhound Lines, Inc. v. Alderson*, 26 Md.App. 277, 336 A.2d 811 (1975); *White v. Burkeybile*, 386 S.W.2d 418 (Mo.1965); *Donnelly v. Goforth*, 284 S.W.2d 462 (Mo.1955); *Gaddy v. State Board*, 397 S.W.2d 347 (Mo.App.1965); 31A C.J.S. *Evidence* § 277 (1964). A definite promise by a person in an accident to pay for damages resulting from the accident may constitute an implied admission of fault. *Potts v. Armour & Co.*, 183 Md. 483, 39 A.2d 552 (1944).

The trial court apparently based the exclusion of this evidence on I.C. § 41–1840, which states that *payments* made on account of bodily injury are not admissible in evidence.[1] That statute, however, presupposes that liability has not been admitted. The purpose of the statute clearly is to protect a person who has not admitted liability, and does not want to admit liability, but yet wants to make payments. The statute has no application where liability is admitted.[2] To hold otherwise would allow a party to completely admit liability, wait till all the evidence had dissipated, then deny liability.

These letters and payments should also have been admitted on the issue of estoppel. "A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right." *Kallock v. Elward*, 118 Me. 346, 108 A. 256, 258 (1919). *Accord, Holmes v. Graves*, 83 Ariz. 174, 318 P.2d 354 (1957); *Sanger v. Larson Construction Co.*, 126 Colo. 479, 251 P.2d 930 (1952); *Johnson v. Neel*, 123 Colo. 377, 229 P.2d 939 (1951); *Mountain Stone Co. v. H. W. Hammond Co.*, 564 P.2d 958 (Colo.App.1977); *In re Asterbloom*, 63 Nev. 190, 165 P.2d 157 (1946). *See also Priestly v. Inwood Industries, Inc.*, 560 P.2d 822 (Colo.1976). If these letters and payments are not admissible as evidence of or as tending to establish liability, they are most certainly admissible as tending to establish an estoppel.

---

1. Even if the payments themselves are not admissible, the letters constitute an admission against interest unrelated to any payments, and as such they are not covered by I.C. § 41–1840.

2. I.C. § 41–1840 is apparently based on Fed.R. Evid. 409, which provides that "[e]vidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury." The commentary to Rule 409 states:

"Contrary to Rule 408, dealing with offers of compromise, the present rule does not extend to conduct or statements not a part of the act of furnishing or offering or promising to pay. This difference in treatment arises from fundamental differences in nature.

Communication is essential if compromises are to be effected, and consequently broad protection of statements is needed. This is not so in cases of payments or offers or promises to pay medical expenses, where factual statements may be expected to be incidental in nature."

At no point has Albertson's alleged that these letters and payments represented mere offers of compromise. The parties were neither proposing a settlement nor discussing a claim for damages. Thus this case is clearly distinguishable from those cases where one party offers to settle in order to avoid litigation. *See Arnold v. Owens*, 78 F.2d 495 (4th Cir. 1935); *Sims v. Sowle*, 238 Or. 329, 395 P.2d 133 (1964).

Once it is accepted that these letters and payments are admissible, the next issue is whether the trial court erred in denying the Tommerups' motion for summary judgment. The Tommerups moved for summary judgment on two grounds: (1) that Albertson's had admitted liability and (2) that Albertson's should be estopped from denying liability.

In their affidavits in support of their motion, the Tommerups stated their belief that the letters (and payments) were admissions of liability. They are clearly capable of that interpretation. Albertson's, though afforded an opportunity to present affidavits which might have tended to explain away those statements, did not do so, and presumably could not do so. Although Albertson's claims the benefit of I.C. § 41–1840, its letters did not mention that statute, or in any way alert the Tommerups to the fact, later asserted, that it was not admitting liability. Nor did Albertson's furnish any affidavit whatever purporting to prove that the Tommerups were put on notice that payments were being made without admitting liability.

Rule 56(e) states that the adverse party may not rest upon mere allegations or denials of his pleading, but must come forth with affidavits stating material facts so as, as this Court has so often held, to present an issue of fact and avoid the entry of summary judgment. On the Tommerups' motion for summary judgment it was proper for the trial court to determine the issue of liability, if that issue could be determined as a matter of law on the facts presented. In fact Rule 56(c) specifically provides that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." On the state of the record before it, the trial court should have held that the letters did in fact admit liability,[3] and payments made thereafter were in furtherance of and corroborative of that admission.

The Tommerups also stated in their affidavits in support of their motion for summary judgment that it was in reliance on Albertson's promise to pay Mrs. Tommerup's bills that they had not consulted legal counsel at the time of the accident or obtained and preserved all evidence on the issue of liability. Again, these statements were unopposed by Albertson's.

The elements of promissory estoppel[4] are (1) a promise clear and unambiguous in its terms; (2) reliance on it by the party to whom the promise is made; (3) that such reliance is both reasonable and foreseeable; and (4) that the party asserting it was injured by his reliance on the promise. *Tiffany Inc. v. W. M. K. Transit Mix, Inc.*, 16 Ariz.App. 415, 493 P.2d 1220 (1972); *Youngman v. Nevada Irrigation District*, 70 Cal.2d 240, 74 Cal.Rptr. 398, 449 P.2d 462 (1969); *Graddon v. Knight*, 138 Cal.App.2d 577, 292 P.2d 632 (1956).

> "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and

---

3. The majority states that this issue was not addressed on appeal. To the contrary, the whole theme of the Tommerups' argument is that the letters constituted an admission of liability, and payments made thereafter were in furtherance of that admission.

4. The majority does not see the issue of promissory estoppel as having been raised below. However, "[a] party entitled to an estoppel or waiver need not in all cases formally plead them. If the facts constituting the estoppel or waiver *are in any way* sufficiently pleaded, he is entitled to the benefit of the law arising therefrom." (Emphasis added.) *Palovik v. Absher*, 198 Okl. 671, 181 P.2d 989, 990 (1947). *Accord, Palmer v. Crews Lumber Co., Inc.*, 510 P.2d 269 (Okl.1973). Where the facts as disclosed by The Tommerups made the issue of estoppel inherent in the case the issue was legitimately before the trial court. *Dissault v. Evans*, 74 Idaho 295, 261 P.2d 822 (1953). From the facts presented below, the issue of promissory estoppel was inherent in the case, and the language used by the Tommerups that "the conduct of the defendant in assuming the obligation to pay medical expenses . . . has so seriously prejudiced plaintiffs" that the defendant should be estopped from denying liability, when read in connection with their motion to amend their pleadings "to conform to the evidence of estoppel," sufficiently raised the issue of promissory estoppel.

which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Southern California Acoustics Co. v. C. V. Holder, Inc.*, 71 Cal.2d 719, 79 Cal.Rptr. 319, 323, 456 P.2d 975, 979 (1969), quoting Restatement of Contracts § 90 (1932).

Similarly, "[t]o constitute quasi estoppel the respondent must have gained some advantage for herself, produced some disadvantage to appellant, or induced him to change his position. It must be unconscionable to allow her to maintain a position which is inconsistent with one of which she accepted a benefit." *Dawson v. Mead*, 98 Idaho 1, 4, 557 P.2d 595, 598 (1976).

All of the elements of both promissory and quasi-estoppel are present here. The affidavits of the Tommerups were unopposed and the trial court should have held that (1) Albertson's had promised to pay all of the Tommerups' bills; (2) appellants in reliance thereon took no action to ascertain and preserve the factual elements necessary to litigation; (3) Albertson's had to reasonably foresee that this would happen; and (4) appellants were injured by this reliance.

The Court's opinion in its quasi-estoppel analysis, however, argues that appellants suffered no injury by this reliance, and that it would be wrong to conjecture (1) that the Tommerups might have found evidence and (2) that that evidence would have been favorable to them. This is a prime example of putting the cart before the horse. Albertson's, not the Tommerups, is wholly responsible for the three and one-half years of delay during which the Tommerups labored under the Albertson's-induced belief that there was no need to gather and preserve evidence. The Court in effect is saying that if a potential party defendant can delude a potential party plaintiff into thinking that the latter will be paid his damages without the need of a lawsuit, and if that delusion is maintained until all possible evidence is gone, there can never be an estoppel because there will be no way of knowing what the evidence would have been. Here Albertson's is thus rewarded for having dissuaded the Tommerups from gathering and preserving evidence—evidence the nature of which obviously prompted Albertson's to admit liability and commence paying medical bills. The very principle of estoppel is to prevent unconscionability, and what can be more unconscionable than what took place here?

Albertson's in its brief makes the following statement:

"It is difficult to see what relevance these photographs, or Mr. Tommerup's testimony, have to the issues before the Court in this action. The photographs represent the store fronts of *some* of Defendant's competitors as they existed approximately 4½ years following the date of the accident in question. If the photos were offered and admitted for the purpose of establishing some standard by which the Defendant's conduct was to be measured, they certainly would have no relevance to such a standard as it may have existed on the date Mrs. Tommerup fell, September 17, 1972."

Albertson's own argument serves to illustrate the very point at issue here—Tommerups' inability to present relevant evidence because of the lapse of time.

The facts are undisputed: because of Albertson's promise to pay, appellants took no action to marshal and preserve the evidence necessary to present their case. Thus they were prejudiced and the trial court should have granted their motion for summary judgment on the theory of estoppel as well as on the theory of an outright admission of liability. Apparently three members of the Court do not see how a reasonable person could read those letters as an admission of liability. Be that as it may, and assuming some degree of reason on the part of the other two members of the Court, at the least the letters should have been submitted to a jury of reasonable persons for their decision on that issue. One necessarily wonders what view the Court would entertain if Albertson's had even more specifically stated: we have investigated the accident, we admit liability and we will pay your bills, and, when you are ready, we will finalize your claim by working directly with you.

**12**

I cannot believe that the legislature on being prevailed upon to enact I.C. § 41–1840, envisaged that the statute would be used to obtain the result we see today. I respectfully dissent.